FRANK E. LAWRENCE, and MARGARET G. LAW-
RENCE,

*Plaintiffs and Respondents,*

vs.

THOMAS DEMOS, JR., and LOIS M. DEMOS,

*Defendants and Appellants.*

(No. 2533; May 27, 1952; 244 Pac. (2d) 793)

For the defendants and appellants the cause was submitted upon the brief of Anderson & Morgan of Gillette, Wyoming, and Burton S. Hill of Buffalo, Wyoming, and oral argument of Burton S. Hill.

For the plaintiffs and respondents the cause was submitted upon the brief of H. Glenn Kinsley of Sheridan, Wyoming, and William C. Holland of Buffalo, Wyoming, and oral argument of H. Glenn Kinsley.

## OPINION

RINER, Justice.

The District Court of Johnson County, Wyoming, rendered a judgment in favor of Frank E. Lawrence and Margaret G. Lawrence, plaintiffs against Thomas Demos, Jr., and Lois M. Demos, defendants below. We shall usually refer to the parties herein as they were aligned in that court, or as appellants or respondents

as they appear here. The facts of the case would seem to be substantially as follows:

Under date of October 5, 1948, the plaintiffs and defendants entered into a written contract which reads:

"REAL ESTATE SALE AGREEMENT.

"THIS AGREEMENT made and entered into in duplicate this October 5, 1948, by and between FRANK E. LAWRENCE and MARGARET G. LAWRENCE, husband and wife, of Buffalo, Johnson County, Wyoming, first parties, and THOMAS DEMOS, JR., and LOIS M. DEMOS, husband and wife, of Gillette, Campbell County, Wyoming, second parties, WITNESSETH:

"That the first parties, for and in consideration of the sum of ten thousand dollars in hand paid by the second parties and upon the condition that the second parties well and faithfully perform the covenants, promises and conditions hereinafter provided to be kept and performed by them, do hereby agree to sell and convey to the second parties and the second parties agree to purchase the following described lands and premises, towit:

"southwest quarter of Section 25; west half northeast quarter and west half and southeast quarter of Section 26; east half and southeast quarter northwest quarter and east half southwest quarter of Section 27; northeast quarter of Section 34; north half northeast quarter, and southwest quarter northeast quarter and northwest quarter of Section 35; in Township 46 North of Range 83,

Lots four, five and six of Section 6; in Township 45 North of Range 82, Lots one, two, three and southeast quarter northeast quarter and east half southeast quarter of Section 1, in Township 45 North of Range 83, all West of the Sixth Principal Meridian, Johnson County, Wyoming, containing a total of 1952.23 acres, more or less, together with all water, reservoir and ditch rights and all other appurtenances thereunto belonging, howsoever the same may be evidenced, but expressly excepting from this contract and reserving unto the first

parties, their heirs and assigns forever, an undivided one-half (½) of all oil, gas and other minerals in, on or under said lands, together with such a proportionate interest in any and all bonus payments, rentals, royalties or other payments which may be derived from such oil, gas and mineral rights,

"subject to the following terms and conditions:

"The purchase price of said lands and premises is the sum of seventy thousand dollars ($70,000.00), of which amount the sum of ten thousand dollars ($10,000.00) has been paid upon the execution of this agreement and the second parties agree to pay the balance of sixty thousand dollars ($60,000.00) as follows: the sum of ten thousand dollars ($10,000.00) on or before November 1, 1948, and thereafter, beginning November 1, 1949 the sum of three thousand dollars ($3,000.00) on the first day of November of each year and continuing until said purchase price is paid in full, it being understood that the final payment will be $2,000.00. Second parties agree to pay interest from date on the principal balance of said purchase price at the rate of five per cent (5%) per annum, such interest to be paid on the first day of November of each year, including November 1, 1948, and at all times shall be computed and paid on the average remaining principal balance. Second parties may make additional payments on the principal at any time after January 1, 1949, such payments to be in the sum of $1,000.00 or multiples thereof and provided further that not more than twenty thousand dollars ($20,000.00) shall be paid in the calendar year 1949 without the permission of the first parties.

"Upon the payment of the purchase price aforesaid and the compliance with the other terms and conditions of this contract by the second parties, the first parties agree to execute and deliver to the second parties a good and sufficient warranty deed conveying said lands and premises to the second parties, subject only to the reservations hereinbefore provided and to such reservations or limitations as are contained in the patents to said lands from the United States. First parties agree however that at such time as the second parties have reduced the principal balance to twenty-five thousand dollars ($25,000.00) that they will execute and deliver

said deed to the second parties should they desire this to be done and in such event the second parties agree to execute and deliver to the first parties a promissory note for such balance of the purchase price, the same to be secured by a first mortgage on said lands and premises and to be payable at the rate of $3,000.00 per year and to bear interest at the rate of 5% per annum the same as originally provided in this contract.

"First parties agree to have the abstract of title extended so as to show good and merchantable title to be in the first parties, free of encumbrance or defect, and that as soon as the same is extended that they will deliver the same to the second parties for examination and that the second parties shall have a reasonable time, not to exceed 30 days, in which to examine said abstract and to report any reasonable objections thereto and should such defects appear the first parties shall diligently proceed to have the same corrected, so that said title shall be good and merchantable and free of encumbrance or defect.

"At the time the sum of $10,000.00 is paid on November 1, 1948, the first parties agree to assign to the second parties the State Lease on Section 36, Township 46 North, Range 83 West Sixth P.M., so that the second parties may hold the same in their names and receive the billings for rentals thereon, which rentals they agree to pay, but the second parties agree to execute and deliver a re-assignment of said lease to the first parties to be held as collateral with this contract. First parties also agree that at such time they will, subject to the approval of the lessor, assign to the second parties the grazing lease which they hold from Joseph Nolen, which expires April 1, 1952, upon the following described lands, towit: south half northwest quarter and southwest quarter of Section 1; southwest quarter northwest quarter, and north half southwest quarter, and southeast quarter southwest quarter and southeast quarter of Section 2; south half northeast quarter, and southeast quarter northwest quarter, and northeast quarter southwest quarter and north half southeast quarter of Section 3, all in Township 45 North of Range 83 West Sixth Principal Meridian, containing 800 acres. "Second parties agree that they will at all times keep

the buildings, fences, ditches and other improvements on said lands in good order and repair and that they will irrigate the lands for which water is appropriated so as not to allow the water rights to be jeopardized by non-use. It is also understood and agreed that any new or additional buildings, fences or other improvements which shall be placed on said lands by the second parties shall be deemed to be additional security for this contract and shall not be removed from said lands. Second parties also agree that they will pay the taxes on said lands and premises as they become due and that they will not allow the same to become delinquent and that they will keep the buildings on said lands insured against fire in a sum of not less than $11,000.00 with loss payable to the parties hereto as their interests appear.

"Second parties agree that they will not assign or transfer this agreement without the written consent of the first parties.

"It is expressly agreed that the terms, obligations and conditions of this contract are jointly and severally binding upon the parties hereto and that such terms, obligations and conditions shall extend to and bind and shall inure to the benefit of the heirs, administrators and assigns of the respective parties hereto. It is also understood and agreed that all the right and interest vested in the second parties under this contract shall be held by them as tenants by the entireties and not as tenants in common.

"Provided always, and these presents are on the express condition, time being of the essence thereof, that in case of the failure or refusal of the second parties to do or perform any or all of the covenants, promises and conditions on their part to be kept and performed and such default shall continue for more than ten (10) days after the second parties have been notified thereof in writing, then the first parties shall have the right to declare this contract void and to re-enter and take possession of said lands and premises and to hold and retain all money paid on this contract up to date of default as rental for the use and occupation of said lands and premises and as liquidated damages. In such event the second parties agree to immediately surrender peace-

able possession of said lands and premises and they shall be liable for any damage or injury to said lands and premises caused by their holding over and in case it shall be necessary for the first parties to retain an attorney or to file suit to regain possession of said lands and premises the second parties shall pay a reasonable attorney fee and all court costs in connection with any such action.

"The first parties hereby release and waive all rights under and by virtue of the Homestead exemption laws of the State of Wyoming.

"WITNESS the hands of the parties the day and year hereinabove first written.

/s/ Frank E. Lawrence
/s/ Margaret G. Lawrence
/s/ Tom Demos, Jr.
/s/ Lois M. Demos."

Executed in the presence of:

(signed) Anita Smith.

This contract was duly acknowledged by the parties before a notary and included "the release and waiver of the right of homestead." The wives who signed with their husbands being first "duly apprised of their rights and the effect of signing and acknowledging said instrument." Also this agreement was recorded in the office of the County Clerk of Johnson County, November 1st 1948. The vendee, Thomas Demos, Jr., testified:

"Q. Now this agreement which was entered into on or about the 5th of October, 1948, did that clearly express the intention of the parties at that time?

"A. Well, to the best of my knowledge it did.

"Q. Had you taken it to your attorney before you signed it?

"A. Yes, sir."

It will be noted that the premises thus agreed to be sold consisted of 1952.23 acres of deeded land and about

800 acres of leased land. The parties agree that a school section of 640 acres under lease was also included. That the agreed purchase price of the property contracted to be sold was $70,000.00 upon which the defendants paid the sum of $10,000.00 at the time the agreement was executed and the sum of $10,000.00 additionally on November 1st, 1948; that the remainder of the purchase price should be paid in annual installments commencing with November 1st 1949 on which date there should be paid $3,000.00 thereon together with interest at 5% per annum upon the unpaid principal . . . amounting at that time to $2,500.00.

The defendants took possession of the lands thus agreed to be sold on or about October 1, 1948 and resided thereon until the month of November 1949. On November 1st 1949 the defendants failed to pay the $3,000.00 due on the principal sum after payment of the $20,000.00 theretofore paid to plaintiffs; said defendants also defaulted in the payment of the $2,500.00 due on account of the interest which had accrued on that date; never since these defaults made by them have the defendants made or tendered to plaintiffs any additional payments upon the contract of sale above set forth. The defendants likewise failed to keep the buildings on the premises insured against loss by fire in an amount of not less than $11,000.00 as provided in the contract. Neither have said defendants paid the taxes assessed against the property for the year 1949, sold as aforesaid, and as required by the agreement of sale quoted above. The plaintiff, Lawrence, in order to protect this property was obliged to pay for this insurance himself and also to pay these taxes. The defendants further failed to pay the rentals due on the leased lands that were included in the sale aforesaid; these the plaintiff, Lawrence, ultimately had to pay; later it seems the defendants reimbursed him for these lease payments. When the defendants left this property in November

1949 obedient to the Notice of Forfeiture presently to be set forth, they took no steps to protect the plumbing in the house on the premises; as a consequence the water pipes in the building froze and, of course, leaks developed which the plaintiffs were obliged to remedy.

On account of these derelictions on the part of the defendants under their agreed contract of sale they were served with written Notice of Default by the Sheriff of Johnson County acting pursuant to the direction of the plaintiffs. This Notice was dated November 4, 1949, and was served upon the defendants two days later. That notice reads as follows:

### "NOTICE OF DEFAULT.

"TO: THOMAS DEMOS, JR. and LOIS M. DEMOS. "You and each of you are hereby notified that you have failed to comply with the terms and conditions of that certain Real Estate Sale Agreement made and entered into between the undersigned and you on October 5, 1948 and which is recorded in the office of the County Clerk of Johnson County, Wyoming in Book 75 Miscellaneous Records at page 398, said agreement providing for the sale of certain lands and premises known as the "Horn Ranch" and containing 1952.23 acres, more or less, situate in Townships 45 and 46 North, Ranges 82 and 83 West 6th P.M., Johnson County, Wyoming, and more fully described therein, and particularly that you have failed to do and perform the following covenants, promises and conditions on your part to be kept and performed as expressly provided therein, towit:

"1. To pay the sum of $3,000.00 on the principal of the purchase price of said lands and premises together with interest at the rate of 5% per annum from November 1, 1948 to November 1, 1949 on the balance of the purchase price in the amount of $50,000.00, said interest being in the amount of $2,500.00. That said payment of $5,500 on principal and interest was due and payable on November 1, 1949.

"2. To keep the buildings on said lands and premises insured against fire in an amount of not less than $11,-

000.00, with loss payable to the parties as their interest appear under said agreement. This default has existed since September 1, 1949.

"You are further notified that should the defaults specified above continue for more than ten (10) days after delivery of this notice to you that we shall declare said contract void and re-enter and take possession of said lands and premises and that we shall retain all money paid on said contract up to the date of default as therein provided.

"Dated this November 4, 1949.

/s/ Frank E. Lawrence
/s/ Margaret G. Lawrence."

After the expiration of ten (10) days from the date of service of this Notice the plaintiffs declared a forfeiture of the sale agreement aforesaid and demanded from defendants the possession of the lands and premises described in said agreement; this property was then surrendered by defendants to plaintiffs. While the defendants moved from the premises—nevertheless they have never been willing to release them of record and clear the title for plaintiffs which was encumbered by the recording of the sale agreement aforesaid. In consequence it became necessary to bring this suit in the district court as above mentioned to have plaintiffs' title to said lands and property quieted in favor of the latter. This had to be done because plaintiffs resold the ranch property together with a large amount of other property to one Welty. It appears that plaintiffs sold the property embraced in the contract of sale for about the same price as it was sold to the defendants, Demos Jr. and his wife. Lawrence, one of the plaintiffs herein was required to do a lot of work to repair the property which the defendants had wrecked amounting to more than $3,000.00. This is according to the testimony of Lawrence which we are bound to take as true.

As stated above it became necessary to bring a suit to quiet title in order to furnish Welty with a clear title to the property he was buying, he having withheld part of the purchase price of the property sold to him until the title was clear in the plaintiffs.

The defendants made no defense to the action to quiet title and admitted the principal defaults on their part charged against them. However, they sought by cross-petition to recover the sum of $13,450.00 being a portion of the $20,000.00 paid by them upon the agreement to purchase the property aforesaid prior to and on November 1st, 1948, after deducting the rental value of said premises as claimed by the defendants during the period they resided on said land.

This action, to state the matter shortly, is an attempt on the part of the defendants to recover a portion of the down-payments made by them on the land sale contract quoted above, after they, the vendees, have made sundry defaults in the performance of what they agreed in writing to do as set forth above; the vendors being not in default and always ready and willing to perform the contract which they had signed.

No excuse appears forthcoming from the defendants why the defaults were made and no attempt seems to have been made to remedy the several defaults after they had been allowed to occur.

Before the case was heard by the court there was a pre-trial conference held in which counsel for both parties participated with the court. Thereafter the latter entered the following "Pre-Trial Conference Order."

"This cause coming on for a Pre-Trial Conference with the attorneys of record for the above named parties for the purpose of simplifying the issues and obtaining admissions and stipulations in order to avoid unnecessary proof, and the Court having heard the discussion relative to the material allegations of the pleading filed

herein, finds that certain admissions have been made and agreed upon, and by stipulation of counsel proof therefor dispensed with.

"IT IS THEREFORE, ORDERED that the following admissions shall be received and accepted by the Court in the trial of said cause, without the requirement of proof thereon, to-wit:

"1. That the plaintiffs at the time of commencement of the action were the record title owners of the land described in their petition.

"2. That the Agreement for Warranty Deed was duly made and entered into between the parties.

"3. That on November 1, 1949 there was due plaintiffs from the defendants under said Agreement. the principal sum of $3,000.00 and the sum of $2,500.00 as interest.

"4. That insurance in the amount of $11,000.00 was not secured by the defendants as required by said Agreement.

"5. That service of Notice of Default, copy of which is attached to plaintiffs' petition, was made upon the defendants.

"6. That plaintiffs re-entered and took possession of said lands and premises on or about December 1, 1949.

"7. That the real estate taxes that have accrued under said Agreement have not been paid by the defendants.

"8. That said Agreement is recorded and has not been released.

"9. That the defendants paid the sum of $20,000.00 under said Agreement.

"IT IS FURTHER ORDERED that plaintiffs shall submit to defendants a copy of an Agreement for Warranty Deed made by plaintiffs with a new purchaser of said lands and premises.

"Done in Open Court this 11th day of June, 1951."

The trial was thereafter had on June 19th, 1951, the court sitting without a jury, and omitting the recital of appearances of counsel the following findings were rendered:

"The Court having heard the evidence and the argument of counsel and being fully advised in the premises finds generally for the Plaintiffs and against the Defendants and makes the following special findings to-wit:

"That the Plaintiffs are and were, at the time of the filing of this action, the owners and in possession of and entitled to the sole and exclusive possession of the following described lands and premises situate in Johnson County, State of Wyoming, to-wit:

"The Southwest quarter (SW¼) of Section 25; West half of the Northeast quarter (W½NE¼) and West half (W½) and Southeast quarter (SE¼) of Section 26; East half (E½), and Southeast quarter Northwest quarter (SE¼NW¼) and East half of the Southwest quarter (E½SW¼) of Section 27; Northeast quarter (NE¼) of Section 34; North half Northeast quarter (N½NE¼), and Southwest quarter Northeast quarter (SW¼NE¼) and Northwest quarter (NW¼) of Section 35 in Township 46 North of Range 83,

"Lots four, five and six of Section 6, in Township 45 North of Range 82, Lots one, two, three and Southeast quarter Northeast quarter (SE¼NE¼) and East half Southeast quarter (E½SE¼) of Section 1, in Township 45 North of Range 83 West, all West of the Sixth Principal Meridian, Johnson County, Wyoming, containing a total of 1952.23 acres, more or less, together with all water, reservoir and ditch rights and all other appurtenances thereunto belonging, howsoever the same may be evidenced.

"The Court further finds that on October 5, 1948, the Plaintiffs and Defendants entered into an agreement in writing, by which the Plaintiffs agreed to sell to the Defendants, and the Defendants agreed to purchase from the Plaintiffs, the lands and premises above described. That the purchase price of said real estate was the sum

of $70,000.00 upon which $10,000.00 was paid at the execution of said agreement and the further sum of $10,000.00 was paid within thirty (30) days thereafter. That on November 1, 1949 there was due to the Plaintiffs from the Defendants, under said agreement, the principal sum of $3,000.00 and the sum of $2,500.00 as interest, which sums the Defendants failed to pay and thereby defaulted in the performance of said agreement. That said Defendants further neglected to keep the buildings on said premises, insured against loss by fire in the amount of $11,000.00 as required by said agreement and neglected to pay the taxes against said real estate, as provided in said agreement.

"That on November 7 and 16, 1949, the Plaintiffs caused notice to be served upon the Defendants of their default in the performance of said agreement and notified the Defendants that should said defaults continue for more than ten (10) days thereafter, the Plaintiffs would declare said agreement void, and would re-enter and take possession of said lands and premises and retain all moneys paid on the agreement up to date of default as liquidated damages in accordance with the terms of the agreement. That said defaults of the Defendants in the performance of said agreement continued for a period of more than ten (10) days after the delivery of said notice and the Plaintiffs declared said agreement void and did on or about December 1, 1949, re-enter said premises and take possession thereof, and ever since have been and now are, in the sole and exclusive possession of the same, and entitled to the possession thereof. "The Court further finds that the defaults of the Defendants in the performance of said agreement were such, as entitled the Plaintiffs to declare said agreement void and terminated; that the parties to said agreement intended and expressly provided in their said agreement, that the money paid by the Defendants thereon, in case of default, should be retained by the Plaintiffs as liquidated damages that said agreement provided, that time was of the essence thereof. That the amount of actual damages resulting from such defaults cannot be readily ascertained or determined, and would be difficult of estimation, and the amount paid under said agreement is, under the circumstances, a reasonable

sum to be retained by the Plaintiffs as 'Liquidated Damages.'

"The Court further finds that said agreement for deed, was filed for record in the office of the County Clerk and ex-officio Register of Deeds of Johnson County, Wyoming, on November 1, 1948 and recorded' in Book 75 Miscellaneous records at page 398. That the Defendants have failed to release said agreement of record and the same constitutes a cloud upon the Plaintiffs' title to said real estate. That the Defendants should be required to release and discharge said agreement of record and that said agreement should' be adjudged void and of no force or effect and the title to said property quieted in the Plaintiffs.

"IT IS NOW THEREFORE HEREBY ADJUDGED AND DECREED by the Court that the Plaintiffs have and recover judgment against the Defendants herein as follows:

"(a) That the Plaintiffs are hereby adjudged to be the sole and absolute owners in fee simple and entitled .to the sole and exclusive possession of the lands and premises described in plaintiffs' amended' petition and hereinabove described to-wit:

"The Southwest quarter (SW¼) of Section 25; West half of the Northeast quarter (W½NE¼) and West half (W½) and Southeast quarter (SE¼) of Section 26; East half (E½), and Southeast quarter Northwest quarter (SE¼NW¼) and East half of the Southwest quarter (E½SW¼) of Section 27; Northeast quarter (NE¼) of Section 34; North half Northeast quarter (N½NE¼), and Southwest quarter Northeast quarter (SW¼NE¼) and Northwest quarter (NW¼) of Section 35 in Township 46 North of Range 83, Lots four, five and six of Section 6, in Township 45 North of Range 82, Lots one, two, three and Southeast quarter Northeast quarter (SE¼NE¼) and East half Southeast quarter (E½SE¼) of Section 1, in Township 45 North of Range 83, West, all West of the Sixth Principal Meridian, Johnson County, Wyoming containing a total of 1952.23 acres, more or less, together with all water, reservoir and ditch rights and all other appurtenances

thereunto belonging, howsoever the same may be evidenced.

"(b) That said agreement for warranty deed, mentioned in Plaintiffs' amended petition and recorded in the office of the County Clerk and ex-officio Register of Deeds of Johnson County, Wyoming on November 1, 1948 in Book 75 of Miscellaneous records at page 398 is hereby adjudged to be void and of no force or effect and the Defendants be, and they are hereby required to release and discharge the same of record.

"(c) That the title to the real estate hereinabove described in this decree be and the same is hereby forever quieted in the Plaintiffs as against the Defendants, their heirs and assigns, and that the Plaintiffs be and they are hereby adjudged to be the sole and absolute owners in fee simple of said real estate and the Defendants be and they are hereby enjoined from asserting any right, title or interest in or unto said real estate or any part thereof.

"To all of which findings and judgment of the Court, the Defendants by their counsel at the time duly excepted, which exception is by the Court allowed.

"Done in Court this 23rd day of June A. D. 1951."

It is proper to note at this point that although the Court in its judgment just quoted made general and special findings of fact against the defendants the disposition of the latter's cross-petition seems to have been overlooked. Of course in view of the Court's findings aforesaid and what we shall presently say setting forth our conclusion regarding this case, a dismissal of defendants' cross-petition should have been ordered and included in the judgment.

Referring to the practice of selling real estate by a contract which provides that the purchase price of the property shall be payable in installments and discussing the law governing such practice the Supreme Court of the United States in Hansbrough vs. Peck, 72 U.S.

(5 Wall.) 497, 18 L. Ed. 520, 523, the court of ultimate authority in the nation remarked:

"This mode of selling real estate in the United States is a very common and favorite one, and the principles governing the contract, both in law and equity, are more fully and perfectly settled than in England or any other country. The books of reports are full of cases arising out of it, and every phase of the litigation repeatedly considered and adjudged. And no rule in respect to the contract is better settled than this: that the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done." (Citing cases.)

In Ketchum vs. Evertson 13 Johns. 359, 7 Am. Dec. 384, 386, 387 the court said:

"The plaintiffs are seeking to recover the money advanced on a contract, every part of which the defendant has performed, as far as he could by his own acts, when they have voluntarily and causelessly refused to proceed, and thus have themselves rescinded the contract. It would be an alarming doctrine to hold, that the plaintiffs might violate the contract; and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right, to recover it back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case; the plaintiffs had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiffs. Why should he not sell? The plaintiffs renounced the contract, and peremptorily refused to fulfill it; it was vain, therefore, to keep the land for them. The plaintiffs cannot, by their own

wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell. This would be most unreasonable and unjust, and is not sanctioned by any principle of law."

Rounds vs. Baxter, 4 Me. 454, 457, also, was a case where one contracted to give another a deed upon his punctually paying a certain sum of money upon installments some of which were paid and the rest were not paid. The plaintiff claimed the right to recover back the sums thus paid. Holding that he could not do this the court stated these views on the point:

"The failure in the article of performance, then, was owing to the plaintiff's own fault, negligence or inattention, and we are to decide whether the law, in such circumstances will furnish him an indemnity against the consequences of this fault, negligence or inattention. It is a proverbial principle that a man is not permitted, in a court of justice, to take advantage of his own wrong or neglect. The principle is founded in the highest reason. If a man, after he has made a fair contract, and partially fulfilled it, may, without the consent, or any fault, on the part of him with whom he has contracted, rescind the agreement, excuse himself at once from all further concern about it, and recover back whatever he has paid, he may speculate and disappoint and injure his neighbor whenever his interest or his passions may dictate; and thus triumph over him in security and enjoy, himself, a complete indemnity. Justice will not sanction such a proceeding. The cases in which one of the parties to a contract may lawfully disaffirm and rescind it, are those in which the other party has been in fault, or where, by the terms of the contract, a right to rescind it is reserved."

In 55 Am. Jur. 928, 929 section 536 the text says:

"According, however, to the majority American doctrine, a vendor who because of the vendee's default enforces a forfeiture provision of the contract in accordance with its terms, or takes proceedings to foreclose the vendee's rights thereunder, does not render himself liable to return money paid on the contract. This is

especially true where the terms of the contract authorize the vendor to declare a forfeiture of the contract and of money paid by the purchaser upon the latter's default, and the vendor in so doing acts fairly and within the scope of the power, or where the contract provides that the vendor may retain the deposit or part payment as a forfeiture in the nature of liquidated damages for the failure of the purchaser to complete the contract. In such a case it is said that the vendor in putting an end to the contract acts in its affirmance and not in rescission of it, by enforcing a remedy expressly reserved."

And the case of Quinlan vs. St. John 28 Wyo. 91, 201 Pac. 149 203 Pac. 1088 infra is cited in support of the principle stated as the "majority American doctrine" as also is the case of Hansbrough vs. Peck, supra.

2 Sutherland Damages (4th Ed.) 2013, 2014, section 585 declares that:

"If a vendee who has partly performed makes default, in consequence of which the sale fails of consummation, he is seldom entitled to relief or compensation for his part performance; he cannot recover a deposit or the money paid. If the vendor has in his hands a sum paid him on the contract of purchase largely in excess of the damages sustained by him in consequence of the loss of the bargain he may retain it, because while the contract subsists the party in default cannot recover it or any equivalent of it in damages, the vendor not being in default. A recent California case, (Glock vs. Howard & Wilson Colony Co. 123 Cal. 1, 55 Pac. 713) which was carefully considered and the opinion in which is worthy of examination, lays down these propositions: If time is made of the essence of the contract and performance by the purchaser a condition precedent, and it is further expressed that he shall forfeit all rights under the contract and all moneys paid thereon, the purchaser, being in default, cannot, without excusing his default, by tendering the amount due, acquire either a legal or equitable right to recover the moneys paid; such right exists only when, after a breach by the purchaser, the vendor agrees to a mutual abandonment of the contract. The vendor's refusal to accept such a tender and to con-

vey does not rescind the contract. If time is made of the essence equity will not ignore that condition, nor relieve against it. The vendor's right to retain the money paid is independent of any express condition of the contract to that effect."

59 A.L.R. 194, 195 supplying an exhaustive note on the right "of defaulting vendee to recover installments of the purchase money paid to the vendor" states editorially that:

"The general rule that a party to a contract cannot breach it, and thereby secure for himself some right or advantage to the detriment of the other party thereto, applies to contracts for the sale of real estate. Hence the vendee who, without breach on the part of the vendor, refuses to perform a contract for the purchase of real estate, cannot recover from the vendor either the amount paid on the purchase price, or a deposit by him as earnest money or as a forfeiture; the vendor being ready, able, and willing to perform upon his part." and cases from some 30 jurisdictions in the United States are cited as supporting this review including the Wyoming case of Quinlan vs. St. John supra. See also additional notes with later cases dealing with the same matter and announcing the same principle of law in 102 A.L.R. 854 and also in 134 A.L.R. 1067.

We are accordingly obliged to give careful examination to the case of Quinlan vs. St. John referred to above. That examination discloses that it was in its facts a stronger case for the vendee than is the one at bar. We are not asked to overrule that case and we should hesitate before doing so if we were so importuned in view of the authorities and their reasoning hereinbefore set forth.

In that case a warranty deed was placed in escrow by the parties thereto. This deed undertook to convey to Beatrice Bright certain real property. Beatrice Bright so named in the escrow agreement was conceded to be the same person as Bessie Quinlan, she being the plain-

tiff and plaintiff in error in the litigation. The escrow agreement signed by both St. John and Beatrice Bright provided that she was to pay the escrow agent the sum of $75.00 monthly on the 9th day of each subsequent month until the full sum of $3900.00 was paid; the first payment to commence on January 9th, 1912.

Upon the full payment of $3900.00 being paid the agent aforesaid was authorized to deliver said deed to her. In case of default of payment to said agent of $75.00 per month "at the time and in the manner hereinbefore as provided" then the escrow agent was "authorized to return the said deed to St. John," the other party to the escrow arrangement.

The vendee, Bright, made regular payments until the sum of $2250 was paid but on July 9th 1914 she neglected to pay the $75.00 installment on that day required to be made. The excuse given for not making the payment then was that St. John had interfered with the tenants of Beatrice Bright so as to make them withhold from her the money due from them to her "which with other unavoidable hindrances caused her to fail to meet the installment due on July 9th, 1914, on the exact day it became due." Beatrice Bright, however, endeavored to procure from St. John an extension of a few days time in which to meet said installment but St. John refused to extend the time, recalled the deed from escrow and later on July 25th, 1914, having taken possession of it, sold the property in question to another person. Beatrice Bright had meanwhile during the time she held the property placed upon it improvements valued at $900.00. For these St. John declined to reimburse her but retained them as his own.

She brought action as Bessie Quinlan in the district court of Fremont County against St. John for the recovery of the payments thus made by her with interest from the dates of the several payments and brought

also action for a recovery of $900.00—the value of the improvements—with interest from July 25, 1914. The district court dismissed the first cause of action which set forth the foregoing recited facts upon a general demurrer having been filed and sustained. Bessie Quinlan refusing to plead further a judgment was entered against her dismissing said cause of action.

This court affirmed the action of the trial court in this particular. District Judge Tidball, with the concurrence of Mr. Chief Justice Potter and Mr. Justice Blume, said in the course of the opinion, filed by Judge Tidball that (p. 101 and 102):

"In an installment contract, such as the one at bar, for the purchase of realty, where time is of the essence, or when the prompt payment of the installments is made a condition precedent, as here, and the vendee defaults and without pleading sufficient facts to bring his case within recognized rules of equitable jurisprudence sues at law to recover payments made, the overwhelming weight of American decisions are to the effect that he cannot recover the purchase money paid, nor for improvements placed upon the property. (Citing the Hansbrough vs. Peck case and other authorities.)

In 5 Minnesota Law Review 345 discussing the matter of forfeiture for breach of contract for the sale of real estate this language was used:

"In land contracts time is frequently declared to be of the essence of the contract, and it is provided that the failure of punctual payments of installments will be fatal. The vendor by the literal terms of the contract is armed with power to insist upon forfeiture upon failure of the buyer to pay a single dollar of the price at the exact time prescribed. Where time is of the essence, a clause providing that in case of default in payment of an installment when due, all payments shall be and remain the property of the seller is valid and binding."

Referring to the case of Lytle vs. Scottish American Mortgage Company, 122 Ga. 458, 50 S.E. 402, "which"

as Judge Tidball remarks "is often cited by text writers as being opposed to the majority rule," nevertheless in the Quinlan vs. St. John case this court quotes that court as saying (p. 102):

" 'Of course, where the vendee makes default, he cannot take advantage of his own wrong, so as to give himself a standing as plaintiff in an action to recover for improvements or purchase money paid in part performance of the contract of sale.' "

The Lytle case above cited is one of the cases relied on by counsel for the defendants in an attempt to distinguish the case at bar from the Quinlan case. This, upon the principle involved we do not think can be done.

In the Quinlan case as we have already noted the vendee had paid to the vendor the sum of $2250.00 in cash on a total purchase price of $3900.00 or over 57% of the total amount due. If the sum claimed for improvements, $900.00, be added to the cash thus paid it results in the vendor receiving over 80% of the purchase price, yet no recovery for cash paid or improvements placed upon the property by Bessie Quinlan was allowed her as against the vendor in that decision, a decision which so far as drawn to our attention has never been overruled and which Mr. Chief Justice Potter declared in his concurring opinion, denying a petition for rehearing filed by counsel for the vendee in that case, Mr. Spriggs of Lander, was given "a very careful and thorough consideration on the former hearing." And the learned Chief Justice also stated that the conclusion in the Quinlan case was reached by the court "only after an exhaustive examination of the authorities upon the questions presented." That Judge likewise said that the court after examining the authorities cited in the brief in support of the petition for rehearing remained "convinced that the case was correctly decided."

In the case at bar the amount paid by vendees before default was considerably less than half the purchase price — to be more exact it was only about 28½% thereof. We have already mentioned the fact that the vendee, Demos, Jr., stated that before the agreement was signed he took the advice of counsel regarding it and that the agreement clearly expressed the intention of the parties at the time it was executed. The Quinlan case aforesaid was decided October 18, 1921, so all parties before us now knew or should have known their rights thereunder before signing the instrument.

It may be further appropriately observed here that in the Quinlan case the only default was her failure to pay the $75.00 installment when it fell due. In the case at bar, however, there were in addition to the failure to pay the installment of $3,000.00 due on November 1st, 1949, with $2,500.00 interest on the unpaid portion of the remainder of the purchase price, a number of other unexcused defaults—many of them fraught with serious consequences to plaintiffs if these defaults had not been promptly remedied by them.

In the case at bar the vendees are before us with a general finding against them and the special finding that the actual damages from the defaults of the vendees could not be readily ascertained and determined and would be difficult of estimation and that the amount paid pursuant to the agreement is, under the circumstances, a reasonable sum to be retained by the vendors as "liquidated damages."

We are inclined to think that under all the facts shown in this case that the legal principles announced in the Quinlan case supra must be regarded as decisive and that the judgment below was proper and should be affirmed after due modification. As pointed out hereinabove this judgment does not undertake to dispose of

defendants' cross-petition and it accordingly should be modified by inserting a provision dismissing that pleading of the defendants. As heretofore mentioned there are "a general finding and special findings" against the vendees in the judgment of the District Court under review.

With the modification suggested above duly made the judgment as hereinbefore stated should be affirmed.

*Modified and Affirmed.*

BLUME, C.J., and ILSLEY, J., concur.