McMURRY OIL COMPANY, a Wyoming Corporation; John W. Martin; J.J. Meier; Fort Collins Consolidated Royalties, Inc., a Colorado Corporation; Hurley Oil Properties, a Wyoming Corporation; W.N. McMurry; Mountain States Exploration, Inc., a Colorado Corporation; Martin Properties, Ltd., an Alabama Domestic Partnership; Enervest of America, Inc., a New York Corporation; Rissler & McMurry Company, a Wyoming Corporation; Marion H. Rochelle; Weeks, Brewer & Associates, a California Corporation; and High Horizons, Phase II, a Washington Corporation, Appellants (Defendants),

v.

DEUCALION RESEARCH, INC., a North Dakota Corporation, Appellee (Plaintiff).

DEUCALION RESEARCH, INC., a North Dakota Corporation, Appellant (Plaintiff),

v.

McMURRY OIL COMPANY, a Wyoming Corporation; John W. Martin; J.J. Meier; Fort Collins Consolidated Royalties, Inc., a Colorado Corporation; Hurley Oil Properties, a Wyoming Corporation; W.N. McMurry; Mountain States Exploration, Inc., a Colorado Corporation; Martin Properties, Ltd., an Alabama Domestic Partnership; Enervest of America, Inc., a New York

Corporation; Rissler & McMurry Company, a Wyoming Corporation; Marion H. Rochelle; Weeks, Brewer & Associates, a California Corporation; and High Horizons, Phase II, a Washington Corporation, Appellees (Defendants).

Nos. 92–46, 92–47.

Supreme Court of Wyoming.

Dec. 3, 1992.

Neil J. Short, Casper, for appellants in Case No. 92–46 and for appellees in Case No. 92–47.

Stephenson D. Emery of Williams, Porter, Day & Neville, Casper, for appellee in Case No. 92–46 and appellant in Case No. 92–47.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT and GOLDEN, JJ.

URBIGKIT, Justice.

McMurry Oil Company and associates (Sellers) entered into a written agreement to sell a collection of oil and gas properties to Deucalion Research, Inc. (Buyer). When the sale fell through, cross-suits followed seeking possession of $50,000 earnest money in addition to contesting fault in the sale agreement termination. The trial court found retention of the $50,000 an unjustified penalty and granted the return of the earnest money to the prospective Buyer while determining that the Sellers had not been in default. We reverse the liquidated damage decision and otherwise affirm the trial court through an analysis which enforces the contractual terms of the parties' sales agreement.

Sellers address for their concept of the issues on appeal:

1. Whether the district court erred in ruling that Paragraph 10 *termination* of the subject contract provided for a forfeiture.

2. In the alternative, whether the district court erred in ordering a return of the earnest money even in the face of finding a forfeiture.

(Emphasis in original.)

Buyer restates:

Whether the Trial Court correctly found that the amount of earnest money deposit was neither consistent with actual damages nor based upon any forecast of compensation for the harm done, and therefore properly concluded that the liquidated damages provision constituted a penalty or forfeiture.

In the Buyer's appeal, they contend:

I. Whether the Trial Court erred as a matter of law in finding that title was marketable.

II. Whether the Trial Court erred as a matter of law in concluding that Plaintiff breached the contract by failing to proceed with the purchase.

Again, Sellers, restate:

1. Whether the district court erred in ruling that title was marketable.

2. Whether appellant/plaintiff Deucalion Oil Company breached the contract in question and is denied any recovery.

3. Whether the claims of appellant/plaintiff Deucalion Oil Company are barred by its failure to mitigate damages and by the doctrine of laches.

The Sellers, entered into a rather normal executory contract to sell extensive oil interest property holdings to Deucalion Research, Inc. The purchase price was $950,000, with $50,000 "earnest money to bind" and the balance payable by cashier's check or wire transfer at closing. Execution of the agreement was attended by a cash down payment received by Sellers from Buyer of $50,000. The established closing date, as extended, came and went. Buyer, about three weeks after the initially established time, provided a written notice of contract rescission based on claimed title defects. This litigation followed to determine who receives the initial $50,000. The trial court found retention of the earnest money payment by Sellers would create an impermissible penalty and ordered repayment to the Buyer, while also determining that the Sellers were not in breach of the agreement by failure to tender merchantable title for the properties to be sold.

Specific title provisions included:

It is the intent of this instrument to deliver to Buyer 100% of the working interest ownership in the properties at an 80% Net Revenue Interest to the Buyer.

\* \* \* \* \* \*

3. *Representation of Seller.* Seller represents to Buyer as follows:

(a) That Seller is the owner of the properties described in Exhibit "A", but does not warrant title thereto.

(b) At Closing, Seller will have and will convey to Buyer all Seller's working interest in the Properties.

(c) Until closing, Seller will not take any action with respect to the Properties which would create any material liabilities or which would create any commitments other than those created in the ordinary course of business without Buyer's written consent.

(d) Seller has the right to sell and transfer the Properties to Buyer and all requisite corporate or other legal authorization to the execution and delivery of this Purchase and Sale Agreement hereunder have been duly obtained and do not conflict with any instrument to which it is a party or by which it is bound.

(e) The representations of Seller set forth herein shall be true on and as of Closing and on and as of the Effective Date with the same force and effect as though made on each of said dates.

4. *Title Examination.* Buyer shall be entitled to perform, or cause to be performed, at Buyer's sole expense, any such title examination as Buyer deems necessary or appropriate. In the event Buyer determines that any title defects exist, Buyer shall notify Seller, in writing, on or before closing of Buyer's title objections; provided, however, Buyer shall notify Seller promptly of any title defects discovered by Buyer. As used in this paragraph, the term "title defect", shall include the failure of any working interest. Seller shall furnish to Buyer on or before closing such curative data as may be necessary to satisfy Buyer that such defects have been resolved. If Seller is unable to provide Buyer such curative data prior to closing, and Buyer is unwilling to waive any such defects, Buyer may so notify Seller and terminate this agreement.

5. *Effective Date, Expenses and Accounting.* The Effective Date of the sale of the properties shall be as of 7:00 A.M., Mountain Daylight Time, on January 1, 1990. Seller shall be responsible for, and pay, all expenses accrued or incurred in connection with the Properties prior to the Effective Date and shall be entitled to receive the proceeds of production lawfully produced from the Properties prior to the Effective Date, including oil in stock tanks and Seller's proportionate share of all production on hand from each well on each respective property as of the Effective Date. Tanks shall be gauged at 9:00 A.M. on January 1, 1990 and all saleable oil be credited to Seller's account. Buyer shall bear all reasonable expenses incurred and accrued in connection with the operation of the Properties in the ordinary course of business effective from the Effective Date and thereafter, and shall be entitled to the proceeds of production lawfully produced from or attributable to the Properties from the Effective Date, and thereafter.

6. *Closing.* Closing shall take place on or before January 1, 1990, unless extended by mutual agreement of the parties * * * [.]

Buyer obtained a title opinion dated December 15, 1989. That opinion found title satisfactory for acquisition purposes subject to certain normal transfer requirements, and then stated:

The records in the office of the Clerk of the District Court in Converse County, Wyoming reveal Civil Action No. 10,915 filed by McMurry Oil Company against Enervest of America, Inc., d.b.a. Independence 1986 Drilling Program and Independence 1987 Drilling Program. The action was filed November 22, 1989, seeking foreclosure of an oil and gas lien claimed by McMurry Oil Company on the South Cole Creek Dakota Sand Unit # 61 and # 62 wells and Campbell fee well. The action also seeks a judgment for unpaid operating expenses in the amount of $78,348.03. No answer has been filed to date. While Enervest does not own an interest of record in the subject lease, or in other leases in the South Cole Creek Dakota Sand Unit, it is entitled to certain revenues from these unit wells by virtue

of an agreement with the working interest owners in the unit.

> *Requirement:* None, but you should be aware that Enervest of America has a claim to certain unit revenues from these wells.

Buyer, in a communication dated January 17, 1990 and received by Sellers on January 26, 1990, gave notice of title rejection and sale agreement termination. The parties agree that the closing date was extended from January 1, 1990 to January 5, 1990 and then to January 12, 1990, but not thereafter. Factually, the record also establishes that the Buyer had been unable to adequately merchandize the project in order to obtain access to required funds to close by the date set in the last extension of January 12, 1990.

■ This court will apply a realistic standard to enforce the agreement of the parties as negotiated and settled. Rather than attempting, at this stage, to rewrite Buyer's "acceptable title opinion," we recognize that any rejection of title came too late and only constituted a subterfuge to attempt to reclaim the earnest deposit when funds had not been raised to complete the purchase. Notice of defect was required under the agreement by the established closing date or, at the latest, by any mutually agreed extension and when given at a time thereafter, it was too late to provide the right of rescission to the prospective Buyer.[1] We will follow the rule stated in *Maxton Builders, Inc. v. Lo Galbo,* 68 N.Y.2d 373, 509 N.Y.S.2d 507, 509, 502 N.E.2d 184, 186 (1986):

> In short, the defendants bargained for and obtained a limited right to cancel which they failed to exercise within the time agreed upon. The cancellation was, therefore, ineffective and the defendants'

refusal to perform constituted a breach * * *.

■ This agreement was a forfeit penalty agreement, *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595 (Wyo.1989), and, consequently, the only damage claimable by Sellers, if Buyer refused to close, was retention of the $50,000 earnest money deposit. *See, however, Metropolitan Mortg. & Securities Co., Inc. v. Belgarde,* 816 P.2d 868 (Wyo.1991) and *Walters v. Michel,* 745 P.2d 913 (Wyo.1987) (alternative remedies stated). The only real issue consequently remaining after our decision that the January 17, 1990 claimed title defect was not a legal justification for rescission is whether legal rules would void the liquidated damage agreement of the parties.

■ We differ from the trial court and require enforcement of the agreement. Consequently, when the Buyer was unable to perform by tendering payment, we leave the earnest money deposit within the agreement to be retained by the Sellers. *Marcam Mortg. Corp. v. Black,* 686 P.2d 575 (Wyo.1984); James O. Pearson, Jr., Annotation, *Modern Status of Defaulting Vendee's Right to Recover Contractual Payments Withheld by Vendor as Forfeited,* 4 A.L.R.4th 993 (1981 & Supp.1992).

■ Enforceability of a liquidated damage provision, in particular when used in executory sales transactions, has broad application. The decision we are presented regarding Sellers' retention of the earnest money deposit is determinable as a question of law. *Marcam Mortg. Corp.,* 686 P.2d 575. The general principle to be applied is that, in the absence of overreaching or unconscionability, the parties should be left within the framework of the terms of the agreement that they negotiate. *Id.* *See also* Wyo. Stat. § 34.1–2–718(a) (1991)

---

**1.** We neither agree nor disagree with the trial court that merchantable title existed. The acreage involved was a relatively small portion of the entire interest to be sold. Clearly, title was correctable and was, in fact, cured if originally unmerchantable. Apparently, Sellers were entitled to the "revenue stream" on the questioned lands, but there was an outstanding unrecorded working interest. Actual resolution was to be achieved by either non-contribution assessment

foreclosure or a buy-out. The foreclosure litigation was resolved by that buy-out settlement.

The sales agreement itself had a "satisfactory to the Buyer" title acceptability provision. Had a notice of title defect been timely given, a converse result from what we presently decide might have been appropriate or, at least, corrective obligations could have been defined. *Cf. Bethurem v. Hammett,* 736 P.2d 1128 (Wyo. 1987).

(Uniform Commercial Code) and *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174 (Wyo.1988). In *Albrecht*, 762 P.2d at 1179, this court, in quoting from *Marcam Mortg. Corp.*, 686 P.2d at 580, said:

> "'If there is an express contract in connection with the damages, that contract, of course, must govern.'" *Studer v. Rasmussen*, 80 Wyo. 465, 344 P.2d 990, 998 (1959).

This court went on to say and recognized that:

> "[T]he supreme court will not rewrite clear contracts. Nor will this court rewrite contracts under the guise of interpretation."
>
> *Wyoming Machinery Company v. United States Fidelity and Guaranty Company*, 614 P.2d 716, 720 (Wyo.1980) (citation omitted). *See also Wyoming Recreation Commission v. Hagar*, 711 P.2d 402 (Wyo.1985) (quoting *Kuehne v. Samedan Oil Corporation*, 626 P.2d 1035 (Wyo.1981)).

*Albrecht*, 762 P.2d at 1179.

A confusion of theories and an incomplete analysis has developed within the numerous cases determining Wyoming sales agreement real estate law. The specific question is Sellers' retention of the earnest money deposit or partial payment upon sale rescission pursuant to the terms of the agreement following Buyer's payment default. Much of the confusion results from *Walker v. Graham*, 706 P.2d 278 (Wyo. 1985) which, in its peculiar facts, is not completely consistent with either prior or subsequent case law.

In simplest concept, within these retained deposit or payment cases, the seller *enforces* the agreement, retains the payment, and rescinds the sale. Conversely, the buyer has an affirmative defense to either rescind the contract and recapture the payment made as an equitable defense of improper forfeiture or to enforce the contract and complete the sale by belated payment.

In this case, the affirmative defense postured by the Buyer was sale rescission and down payment return based on default of Sellers resulting from property title failure.

The only two defenses available to the Buyer were the Sellers' default or contract unconscionability and consequent non-enforceability. This is not a classical forfeiture case.

In the early case of *Quinlan v. St. John*, 28 Wyo. 91, 201 P. 149 (1921), this court recognized the enforceability of the contract as a law action. The decision then found that the buyer failed in pleading to state as a defense an equitable right regarding partial payment return.

> In an installment contract, such as the one at bar, for the purchase of realty, where time is of the essence, or when the prompt payment of the installments is made a condition precedent, as here, and the vendee defaults and without pleading sufficient facts to bring his case within recognized rules of equitable jurisprudence sues at law to recover payments made, the overwhelming weight of American decisions are to the effect that he cannot recover the purchase money paid * * *.

*Id.* at 101–02, 201 P. at 151.

That stated principle remains our constant for subsequent Wyoming law development. Within the many accompanying case citations and quotations, this court then adopted the "majority rule" in *Lawrence v. Demos*, 70 Wyo. 56, 76–77, 244 P.2d 793, 801 (1952) (quoting 55 Am.Jur. 928, 929, § 536):

> "According, however, to the majority American doctrine, a vendor who because of the vendee's default enforces a forfeiture provision of the contract in accordance with its terms, or takes proceedings to foreclose the vendee's rights thereunder, does not render himself liable to return money paid on the contract. This is especially true where the terms of the contract authorize the vendor to declare a forfeiture of the contract and of money paid by the purchaser upon the latter's default, and the vendor in so doing acts fairly and within the scope of the power, or where the contract provides that the vendor may retain the deposit or part payment as a forfeiture in the nature of liquidated damages for the

failure of the purchaser to complete the contract. In such a case it is said that the vendor in putting an end to the contract acts in its affirmance and not in rescission of it, by enforcing a remedy expressly reserved."

The centrality of the rule in application was stated in *Younglove v. Graham and Hill*, 526 P.2d 689, 692–93 (Wyo.1974) where this court, after first discussing forfeiture, stated:

> However, after competent parties have solemnly contracted and agreed to certain conditions, courts should exercise restraint in nullifying the terms thereof or rewriting the contract. It is said that this is "a dangerous jurisdiction which should not be extended," * * *. It does not extend so far as to authorize a court of equity to disregard and set aside a valid stipulation of the parties upon the performance of which their rights are made to depend in the absence of some equitable basis. Consistent with this view we find the following statement in 2 Warvelle on Venders, § 822, p. 964 (2d. Ed.):
>
> > "As has been stated, the doctrine is that if, upon the face of a contract, it clearly appears to have been the distinct understanding and agreement of the parties that if a stipulated act was not performed within a specified time certain consequences were to follow; and if default has been made in the performance within the time, a court of equity will give no relief unless a strict performance was either waived by the party entitled to its benefits or is excused on some special ground of equitable cognizance. * * *" [2]

Two recent cases have followed the non-repayment, contractual enforceability determinant of *Quinlan*, 201 P. 149; *Lawrence*, 244 P.2d 793; and *Younglove*, 526 P.2d 689. These include the most broadly concepted installment sales cases of *Mar-*

cam Mortg. Corp., 686 P.2d 575 and *Greaser v. Williams*, 703 P.2d 327 (Wyo.1985).

Clearly, the sales agreement stated the parties' understanding that the earnest money deposit, in essence an option payment, would be subject to retention by Sellers if Buyer became unable to perform by making the total purchase payment. It would indeed take an unusual factual situation for this court to invade the agreement of this Buyer and these Sellers to redraft what they defined as the understood result for damages if Buyer became unable or refused to perform. *Marcam Mortg. Corp.*, 686 P.2d 575; *Warner v. Rasmussen*, 704 P.2d 559 (Utah 1985). *See also Hooper v. Breneman*, 417 So.2d 315 (Fla. App.1982) and *Hendel v. Scheuer*, 150 A.D.2d 431, 541 N.Y.S.2d 40 (1989), where the buyers breached the sales agreement without legal excuse and could not recover their down payment.

Since this was a liquidated-damage penalty-only-transaction, the Buyer understood its limit of liability was contractually established and could not exceed what had been initially paid as the earnest money deposit. Likewise defined in the agreement was the understanding that if the total purchase became unavailable to the Buyer for sale consummation, the earnest money deposit would be retained by the Sellers. If the contingency developed that the Buyer improperly failed to complete the sale, the agreement provided an assured result.

We reverse the liquidated damage decision that required repayment of the earnest money to the Buyer and otherwise affirm.

---

**2.** This is not a waiver case. *Cf. Angus Hunt Ranch, Inc. v. Reb, Inc.*, 577 P.2d 645 (Wyo. 1978). If there is any real explanation for *Walker*, 706 P.2d 278, perhaps it is postured in a "waiver." Likewise, with the title defect issue removed, this is not a seller default case. *Mader v. James*, 546 P.2d 190 (Wyo.1976).