Chriss L. YOUNGLOVE, Appellant
(Plaintiff below),

v.

GRAHAM & HILL, a Wyoming corporation,
Appellee (Defendant below).

No. 4346.

Supreme Court of Wyoming.

Sept. 24, 1974.

Stephen L. Simonton, Cody, for appellant.

J. D. Fitzstephens and Robert D. Olson of Goppert, Fitzstephens, Day & Olson, Cody, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Younglove, plaintiff below, filed a complaint alleging default in the payments under an agreement to purchase certain lands in Park County, and seeking an injunction to prevent Graham & Hill, defendant below, and buyer under this contract, from removing any gravel from these lands, restitution of the lands, and quieting title to the lands covered by the agreement against this defendant. They executed a "Contract for Deed" on or about January 22, 1972, by virtue of which Younglove agreed to sell and to deliver a deed to certain lands to Graham & Hill upon the payment of the total sum of $44,500 payable in installments as follows:

$4500 upon execution of the agreement. $8405 within 30 days of the date of the agreement.

$3000 along with accrued interest on or before February 1, 1973, and a like sum each succeeding year on that date until the same was fully paid.

The defendant made the first two payments herein provided in the agreement and took possession of these lands but failed to make the $3000 payment or the interest due thereon on February 1, 1973. Plaintiff's attorney in reliance upon a provision in the contract which provided that "in event of default for a period of 30 days after notice of such default the seller may declare all payments theretofore made as liquidated damages and cancel this contract" by a letter dated March 5, 1973, which was received in the office of the de-

fendant March 9, advised them of this default and stated that the amount then due was $3000 on principle and $2298.97 interest, a total of $5298.97. The letter also mentioned that Younglove owed the sum of $500 for rental of the house, including pasture as of February 1, which might be deducted, or that the sum of $550, which would pay the rental until March 1, might be deducted from the payment claimed.

Nothing further was done until April 9, when a notice was served upon First State Bank of Cody, escrow agent under the agreement holding the deed, and the place to which payments were to be made, terminating the contract. On April 13 the bank by letter advised plaintiff's attorney that this escrow matter had been discussed with Ron Hill, the sole stockholder of the defendant corporation, who had said he knew of the letter dated March 5 and had received it. Frisby, the bank officer who wrote the letter, had informed Hill of the termination of the escrow and that Younglove had demanded the return of the deed. Hill was to see his attorney or Younglove that day to discuss this matter. This letter enclosed the original warranty deed and advised the escrow was considered terminated.

On April 16 defendant tendered the amount due, deducting the rental before mentioned. This was not satisfactory and defendant then added the sum of $110.40, being 10 percent of the amount due, to cover any damage plaintiff might have suffered. This was not accepted.

After the original agreement was signed, Younglove not being able to find a place to live made an oral arrangement apparently sometime in the latter part of February, allowing him to live on these premises and use two of the barracks. He was to move some of his material and equipment from certain areas, vacate two of the barracks, irrigate the pasture and property, and keep up the fences.[1]

On May 4 plaintiff filed his complaint, seeking the relief set out above. There were proceedings had for a temporary restraining order and preliminary injunction which will be mentioned in another portion of this opinion. By way of answer, defendant admitted that plaintiff was the owner of the land; that the agreement set out had been made by the parties on or about January 22, 1972; that he was in possession of the land by virtue of the agreement, and had received plaintiff's notice on March 9 advising of the default; that on April 9 plaintiff had declared all payments received as liquidated damages and had requested it to move certain construction machinery from the premises, and had made demand for possession, and asserted a claim of forfeiture; that it had refused to vacate the premises and was still in possession; and further alleged it had been in default of the payment due on February 1 but that it had offered to cure the default by tender of $4859.52 under terms of a letter dated April 16 which had been refused. It admitted it had taken gravel from the premises and had deposited $1500 with the clerk of court to compensate for any such damage, alleged its payment of $12,905 and its readiness to pay any additional amounts ordered by the court, and that it was unjust and inequitable to cause a forfeiture because plaintiff had failed to comply with the terms of his agreement made in connection with the contract by not vacating certain buildings, not moving certain personal property, and not paying rental of $50 per month which would make this forfeiture inequitable.

Although demand was made for a pretrial by plaintiff, none was held and the matter was tried on these pleadings and judgment was entered by the court declaring the agreement to be in full force and effect, ordering payment by the defendant of the installment due with interest, reinstating the escrow, and ordering redelivery

---

1. This statement and all other factual statements which appear in the opinion are based upon the appellate rule of construing any conflict in favor of the successful party, Waters v. Brand, Wyo., 497 P.2d 875, 876.

of the original deed or a new deed to the escrow agent for delivery and the return of the $1500 heretofore deposited with the clerk of court.

It should be thus apparent that the first and foremost question which must be resolved is whether the trial court committed error in not terminating this contract and refusing to declare a forfeiture thereof.

There is an admitted default of payment due under this agreement upon February 1, 1973. This default, however, was not of immediate or operative effect until there was some notice thereof. Plaintiff made no attempt to notify defendant of such default until March 9, although he had no obligation to delay giving this notice for that period. By virtue of the terms of the contract defendant then had 30 additional days, not from the due date but from the date of the notice, in which to cure its default and which it failed to do.

■ Although the court made a general finding in favor of appellee, defendant below, we have examined the statement of the judge made at the time of the disposal of the case in order to more completely understand the basis of the judgment as may be done under Rule 52(a), W.R.C.P., and find that the judge in announcing his decision and as the apparent basis therefor said, "there must be a substantial deviation or default from the terms of the contract before the court can order a termination and revocation of that contract." Thereafter he recited the 29 percent down payment, that the defendant was only one week late in making his payment, and further said that "there is no substantial deviation or default," and that "the contract was not in default."

Any finding that the contract was not in default or that the payment was only one week late is simply inconsistent with the pleadings and admissions of the appellee, who conceded the default by way of answer, but sought to avoid the consequences thereof by the tender of April 17, and the assertion of the equitable grounds of the down payment, and that the plaintiff had failed to comply with conditions of the oral rental agreement.

■ In appellee's brief in defense of the judgment much reliance is made upon the general proposition that "forfeitures are not favored" or as phrased in many cases, "equity abhors a forfeiture." There can be no quarrel with this as a general proposition, Baker v. Jones, 69 Wyo. 314, 240 P.2d 1165, 1171, and cases cited in 2 Wyoming Digest, Contracts, ☞318, p. 426, and cumulative index. This is particularly true when the agreement does not contain a forfeiture clause, Phillips v. Hamilton, 17 Wyo. 41, 95 P. 846, 848; McGinnis v. General Petroleum Corporation, Wyo., 385 P. 2d 198, 202–203. It is obvious, however, that this must depend upon the facts.

■■ However, after competent parties have solemnly contracted and agreed to certain conditions, courts should exercise restraint in nullifying the terms thereof or rewriting the contract. It is said that this is "a dangerous jurisdiction which should not be extended," Carter v. Brownell Auto Co., 217 Ala. 690, 117 So. 304, 305; Douglas v. Knickerbocker Life Insurance Company, 83 N.Y. 492, 504 (1881); Pierce Oil Corporation v. Voran, 136 Va. 416, 118 S. E. 247, 254. It does not extend so far as to authorize a court of equity to disregard and set aside a valid stipulation of the parties upon the performance of which their rights are made to depend in the absence of some equitable basis. Consistent with this view we find the following statement in 2 Warvelle on Vendors, § 822, p. 964 (2d Ed.):

"As has been stated, the doctrine is that if, upon the face of a contract, it clearly appears to have been the distinct understanding and agreement of the parties that if a stipulated act was not performed within a specified time certain consequences were to follow; and if default has been made in the performance within the time, a court of equity will give no relief unless a strict performance was either waived by the party entitled

to its benefits or is excused on some special ground of equitable cognizance. * * *"

Later in the same section appears the following:

"Equity will often intervene to relieve against penalties and forfeitures, where the matter lies in compensation, whether the condition on which they depend be precedent or subsequent; but usually, where a vendee has made default and subsequently tenders the whole of the purchase money or a full compliance with the obligations of the contract, he must, to obtain such relief, present some equitable considerations in excuse for his apparent negligence. * * *"

In Rush v. Kirk, 10 Cir., 127 F.2d 368, 370, that court recognized that forfeiture was "a harsh rule and will be decreed only in a clear case *or when required by the express provisions of a contract.*" (Emphasis supplied.) This court in recognizing this distinction said in Lawrence v. Demos, 70 Wyo. 56, 244 P.2d 793, 802:

"* * * *If time is made of the essence* equity will not ignore that condition, nor relieve against it. * * *"

The same case, 244 P.2d at 803, cites with approval 5 Minn.L.R. 345, which discusses the matter of forfeiture and which will not be repeated here, but a reading of that article will give an understanding of our view.

■ No one would deny the power of the court to relieve the buyer from the consequences of this agreement if the defendant established "some special ground of equitable cognizance." This was apparently recognized by appellee in its answer when it set up the two before-mentioned grounds. This is, however, an affirmative defense under our definition in Texas Gulf Sulphur Company v. Robles, Wyo., 511 P. 2d 963, 965, being one which seeks to avoid the consequences of its acts although admitting plaintiff's claim,[2] and the burden of proof is upon the one asserting an affirmative defense, Sturgeon v. Phifer, Wyo., 390 P.2d 727, 729–730.

■ Although the court in its decision may have indicated a ground we do not view as tenable, we shall examine the remainder of the claims to determine if there be any basis upon which this decision may be sustained, Robinson Transportation Company v. Hawkeye-Security Insurance Company, Wyo., 385 P.2d 203, 206. We find no conflict in the material parts of the evidence insofar as it covers the default, so this becomes a matter of law. The only area of conflict in the evidence is with relation to the terms of the so-called *oral agreement and its compliance therewith by plaintiff.*

■ This, then, entails the responsibility of our examination of this evidence, and particularly the two grounds for equitable relief asserted by appellee. Relying upon the pleadings, they were stated shortly as:

The payment of $12,905 down and the readiness to pay any additional sums the court might feel proper.

The failure of the appellant to comply with the terms of the above-mentioned oral rental agreement for the continued occupancy of the premises, including the failure to pay the monthly rental of $50.

This court is hesitant to declare that a down payment amounting to 29 percent of a total purchase price standing alone is a fact sufficient to trigger and sustain an application for equitable relief from a forfeiture. This is particularly true in light of the statements in Lawrence v. Demos, supra, which involved a down payment of $20,000 on a $70,000 total, and yet a forfeiture was recognized. Nor does this writer deem it amiss to take judicial notice of the rules of the Internal Revenue Service with reference to the accounting for profits on installment sales and widespread reliance

---

2. 2A Moore's Federal Practice, § 8.27, p. 1842 (2d Ed.), suggests an equally applicable test, as follows:

"The pleading of matter not within the claimant's prima facie case."

thereon which was also quoted by the trial court, and we are hesitant to say such payment is alone sufficient to sustain an equitable defense. This would be particularly inappropriate in this case because the record reveals there are gravel deposits on these lands which were removed or are being removed, and the contract, although reserving other minerals, specifically excepts gravel from the mineral reservation. The remaining ground asserted in the request for equitable relief is appellant's failure to comply with the oral rental agreement and performance of the conditions thereof.

Sometime after the closing of this agreement but before the expiration of the agreed 60-day period which had been allowed appellant for removal from these premises, and after he had discovered he could not find a satisfactory place to move, these parties agreed that appellant might stay and continue to live on these premises and occupy certain portions thereof in consideration of his agreement to pay $50 per month rental, vacate certain buildings, irrigate the premises, and keep up the fences. He did not pay this rental during this period nor did he irrigate or vacate the buildings he had agreed to vacate. None of these defaults were called to appellant's attention nor was any request made for compliance. Apparently appellant, relying on his understanding of the agreement, suggested the rentals might be deducted from the installment. Appellee testified that he was not worried about his default in payment because of the defaults of appellant.

■ The claimed default in rental payment does not impress this writer as a substantial or sustainable equitable ground. The remedy lay in appellee's hands and not in those of the court. It could have deducted all this sum due as of February 1, being $500, which was less than 10 percent of the payment due upon the installment and accrued interest. This writer can see no equitable justification for withholding over 90 percent of this admittedly due payment. In the case of Heath v. Gloster, 260 Mich. 85, 244 N.W. 237, 238, rehearing denied 261 Mich. 552, 246 N.W. 494, which was a suit involving a claimed forfeiture upon a contract of sale, one of the grounds asserted by way of defense was an indebtedness due the defendant at the time of the notice of forfeiture. The court very shortly observed:

"* * * This would not excuse her from paying the balance of $200 that was due. * * *"

The writer sees no such excuse under this factual situation, particularly in absence of any demand and the admission and offer in the notice of default that this might be deducted.

With reference to the failure of plaintiff to vacate the buildings and failure to irrigate, conceding only arguendo for purposes of this opinion that the so-called oral agreement might have been considered to have modified this contract, it is obvious that it in no manner nullified the conditions of payment or any of the terms of the paragraph upon which the appellant depends. Appellee does not attempt to show damage resultant from these claimed breaches, and in absence of some demand for performance this writer finds it hard to impute inequitable or unfair behavior sufficient to invoke the arm of equity.

■ Appellant insists the trial court erred in not making a finding that the appellee was in contempt of an order made by the trial court pending the trial, which order was clearly made to preserve the status quo. The particular acts complained of as being in violation of this order were the failure to remove certain machinery from the "garden arable" area and the spilling and dumping of oil on the premises. In light of the trial court's decision, any finding of contempt would only have assuaged the appellant's feelings, which is not the office of civil contempt. However, because we deem it necessary to reverse the trial court, the question of damages which appellant might have suffered resulting from such actions must be resolved either

in a separate suit or by further proceedings in the present case, and a determination of the proper compensation therefore made following the procedure suggested in Cady v. Slingerland, Wyo., 514 P.2d 1147, 1149.

The judgment is reversed and the case is remanded with directions that the trial court enter judgment in conformity herewith, forfeiting the contract and restoring possession of the premises in Younglove, and for determination of the amount of damages, if any, Younglove may have suffered by reason of the conduct of the appellee or the removal of gravel or waste committed since the date of the original judgment.

Reversed and remanded with directions.