(708 P.2d 997)

No. 56,790

DESMA M. MILLER, *Plaintiff/Appellant,* v. CLAYCO STATE BANK, *Defendant/Third-Party Plaintiff/Appellee,* v. INDUSTRIAL STATE BANK, *Third-Party Defendant/Appellee.*

Petition for review denied December 19, 1985.

Opinion filed November 7, 1985.

*George H. Barr,* of Kansas City, Missouri, and *James M. Sheeley,* of Kansas City, for the appellant.

*Jeanne Gorman Rau* and *David L. Skidgel,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee Clayco State Bank.

*John J. Gardner,* of Watson, Ess, Marshall & Enggas, of Olathe, for the appellee Industrial State Bank.

Before SWINEHART, P.J., MEYER, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The plaintiff, Desma Miller, has appealed from a judgment of the trial court denying her recovery on her claim for wrongful garnishment. At issue is the propriety of a garnishment of joint bank accounts in which the garnished debtor, although named as a cotenant, owned no actual interest in the accounts.

The facts giving rise to the lawsuit are not disputed. Desma Miller is a seventy-five-year-old widow who resided in Arizona most of the year for reasons of health. Her son John Miller and his wife Henrietta lived in Parkville, Missouri. Their names were added to the signature card of plaintiff's accounts at Industrial State Bank (Industrial), located in Wyandotte County, as joint tenants for Desma's convenience in order to enable them to perform banking transactions in her behalf. John and Henrietta made no contributions to the accounts.

On July 21, 1980, Clayco State Bank (Clayco) filed suit in the District Court of Johnson County, Kansas, against John and Henrietta as guarantors on a note. Desma was not a party to this suit. At the request of Clayco, a number of prejudgment garnishment orders (plaintiff alleges "some sixty") were directed to various financial institutions in Johnson, Wyandotte and Sedgwick Counties, seeking to attach funds of John and Henrietta Miller.

In response to one of the orders, Industrial answered on July 31, 1980, that it held several joint accounts in the names of Desma, John and Henrietta, and that it would hold pro rata parts of each of the accounts.

John and Henrietta promptly filed an answer stating that Desma was the true owner of the accounts and that all funds were her sole property. They also filed a motion to have the accounts released.

A hearing on this motion was held December 3, 1980, and John and Henrietta, in support of their motion, presented evidence that the accounts were owned solely by Desma Miller. Clayco argued that John and Henrietta had no standing to request the release and since Desma, the real party in interest, was not before the court, the presumption of joint ownership had not

been rebutted. It requested a continuance to permit it to obtain Industrial's records of the accounts.

Clayco's motion for a continuance was denied, and the court ruled that John and Henrietta had met the burden of proof upon them to rebut the presumption of equal ownership of the accounts. It declined, however, to release the accounts at that time pending the submission of briefs on the issue of the standing of John and Henrietta to request the release.

Clayco filed its memorandum brief together with a motion for rehearing and reconsideration on December 15, 1980. On the following day, it then filed a new action in the Circuit Court of Platte County, Missouri, based on the same issues as in the pending Johnson County case. This new case resulted in a judgment against the Millers in May, 1981, which was thereafter filed in Johnson County pursuant to K.S.A. 60-3003.

There is no record that John and Henrietta ever responded to Clayco's memorandum or motion filed in the Johnson County case, or that the court ever ruled on the motion.

Subsequently, on July 31, 1981, the Bankruptcy Court of the Western District of Missouri gave notice that John and Henrietta had filed a petition in bankruptcy and ordered the release of the various accounts being held by Industrial.

The Johnson County action was finally dismissed on September 1, 1981, pursuant to a motion filed by defendants on the ground that the identical issues had been adjudicated in the Platte County case.

Desma Miller filed the present action in Wyandotte County against Clayco on December 11, 1981, claiming that Clayco's action in garnishing plaintiff's accounts was wrongful and that she had suffered damages as a result. She also claimed Clayco's actions were willful, malicious and wanton, and asked for punitive damages. Clayco then filed a third-party petition alleging that any damages suffered by plaintiff were caused by Industrial.

The case was tried to the court on November 17, 1983, and was taken under advisement. In a memorandum opinion filed on February 17, 1984, the court ruled that the garnishment by Clayco of the accounts involved was not wrongful in the first instance and did not become wrongful thereafter, and it ruled in favor of both banks. It is from these rulings that plaintiff has appealed.

Plaintiff contends on appeal that, in view of the ruling by the Johnson County District Court at the December 3, 1980, hearing that John and Henrietta had rebutted the presumption that they owned any interest in the accounts, the garnishment of such accounts by Clayco was wrongful from the time of its inception.

In this state, the rule was early established that a party is entitled to attachment only when the debtor actually owns a beneficial interest in the property attached, and that such interest must exist as a matter of fact or the attachment is wrongful.

In the early case of *McLaughlin v. Davis*, 14 Kan. 168, 169 (1875), the court stated:

"A party is entitled to an attachment only when certain facts exist, not when there is probable cause to believe that they exist . . . . If they do not exist, the attachment is wrongfully issued, and the party causing it to issue is liable for all the damages actually sustained."

The same rule was applicable in an action to recover damages for a wrongful garnishment. *Jacobs v. Greening*, 109 Kan. 674, 202 Pac. 72 (1921). See also 38 C.J.S., Garnishment § 310.

In *Lukens v. First National Bank*, 151 Kan. 937, 101 P.2d 914 (1940), a similar question was involved. The defendant bank sought to attach wheat stored in two elevators to satisfy a judgment against G. W. Lukens. The companies answered that they had no wheat owned by G. W. Lukens. The bank then issued a garnishment order to the two companies. Again, they answered that they had no properties or credits belonging to G. W. Lukens, but only held property belonging to Jim Lukens, his son. The bank disputed the answers, but subsequently dismissed the garnishment without trial. Jim Lukens then sued the bank for damages.

The bank's defense was that it had reason to believe Jim and his father were operating the farm together and that the wheat was at least in part the property of the father. The court instructed the jury that the plaintiff could not recover any damages if the jury believed the bank had probable cause and reasonable grounds for so believing. The Kansas Supreme Court found the instruction clearly erroneous and stated:

"If the garnishment was wrongful in character and the wheat and credits actually belonged to Jim Lukens and not G. W. Lukens, it is no defense to the claim for actual damages resulting therefrom that the bank had reasonable grounds to think that the wheat belonged to G. W. Lukens. It could only be a defense to a claim for exemplary or punitive damages . . . . '[P]robable cause' must exist as a fact and

not merely in the mind of the attaching creditor. [Citation omitted.]" *Lukens*, 151 Kan. at 942-43.

Various theories have been advanced as to the extent to which a joint bank account was subject to garnishment for the debt of one of the cotenants (see *Walnut Valley State Bank v. Stovall*, 1 Kan. App. 2d 421, 566 P.2d 33 [1977], *rev'd* 223 Kan. 459, 574 P.2d 1382 [1978]), and eventually the Kansas Supreme Court was called upon to decide the question. In *Walnut Valley State Bank v. Stovall*, 223 Kan. at 464, the court held:

> "We hold that a garnishment upon a joint tenancy bank account severs the joint tenancy, creating a tenancy in common. A rebuttable presumption of equal ownership between the cotenants remains intact. The burden of proof on a claim the account is owned other than equally between the cotenants lies with the party asserting such claim."

See also *Purma v. Stark*, 224 Kan. 642, 585 P.2d 991 (1978); *Dailey v. Walden*, 7 Kan. App. 2d 712, 648 P.2d 258 (1982).

Clayco argues that the earlier garnishment cases in Kansas are distinguishable and are not consistent with the court's decision in *Walnut Valley*, 223 Kan. 459. It maintains that the severance of a joint tenancy account and presumption of equal ownership supplies the fact of ownership required by *Lukens*, 151 Kan. 937. To hold otherwise, it contends, would in effect virtually nullify the garnishment statute because creditors would be unable to rely upon the answer of the garnishee regarding ownership of a joint account and would be stymied from pursuing available assets of their debtors because of the threat of civil damages if the presumed pro rata ownership interest was later overcome.

There have been no appellate decisions construing the earlier Kansas cases on wrongful garnishment since *Walnut Valley*; however, the principles of garnishment law as stated in *Lukens*, *Jacobs* and *McLaughlin* were reiterated in *Braun v. Pepper*, 224 Kan. 56, 578 P.2d 695 (1978), decided two and one-half months after *Walnut Valley*.

Garnishment is a provisional remedy created by statute to enable a creditor to satisfy a debt out of property, money or credits belonging to the debtor which are in the possession or under the control of another. K.S.A. 60-714 *et seq.*

The law of garnishment has not been a static concept, however. It is being continuously refined by legislative enactments and appellate courts at both the state and federal levels, and much of this activity has been directed toward providing due

process and balancing the interests of the parties involved in garnishment proceedings.

Shortly after *Hillhouse v. City of Kansas City*, 221 Kan. 369, 559 P.2d 1148 (1977), the 1977 session of the Kansas Legislature amended the attachment statute to bring it into conformity with the due process standards defined by the United States Supreme Court, and in 1979 the related area of garnishments was likewise addressed by the legislature.

Clearly, in the garnishment of a joint bank account, only the interest actually owned by the garnishment debtor is subject to seizure. Any interested person, including a cotenant, may seek to have the garnishment dissolved. K.S.A. 60-712(a). Under the rationale of *Walnut Valley*, when the ownership of the garnished account is disputed, an expeditious hearing of the issue is contemplated, and there is imposed upon the party seeking to rebut the presumption of equal ownership the burden of proving otherwise.

When the presumption has been rebutted, however, a corresponding duty is then imposed upon the garnishment creditor to see that the garnishment is released within a reasonably prompt period of time, and the failure to do so makes the continued retention of the garnished funds beyond such time wrongful. In other words, a garnishment that was not wrongful in the first instance at that point becomes wrongful and there inures then to the rightful owner of the funds a cause of action against the garnishment creditor for all actual damages thereafter sustained by the owner, without proof of malice or want of probable cause.

In this case, Clayco, in effect, simply abandoned further prosecution of the Johnson County lawsuit under circumstances that left the plaintiff with two-thirds of her accounts wrongfully impounded. The trial court, therefore, erred in holding that plaintiff had no cause of action against Clayco for any resulting damages.

It is undisputed that Desma Miller's accounts were not released until ordered by the Bankruptcy Court on July 31, 1981, eight months after the Johnson County District Court found that the Millers had rebutted the presumption of equal ownership in the accounts. Plaintiff contends that Clayco's actions in continuing the garnishment for this period of time were willful, wanton and malicious, entitling plaintiff to punitive damages.

At the time Clayco filed its memorandum brief in the Johnson County case, it also filed a motion for rehearing and reconsideration on the basis that Industrial's records, which it had subpoenaed for that hearing, had not been provided, and stated: "If the Bank's records disclose that the subject accounts are the sole property of [Desma Miller] [Clayco] will voluntarily release these garnishments."

The trial court, in denying plaintiff's claim for punitive damages, held that the fact that Clayco's motion was never ruled on by the Johnson County District Court nor a final opinion ever issued on the matter under advisement did not make Clayco legally liable for the delay in releasing the accounts. It also noted that neither John and Henrietta, nor Desma, nor the court, ever responded to Clayco's memorandum and motion.

There was no duty on the part of Desma to appear in the action to seek a release. John and Henrietta simply filed for bankruptcy, and Clayco did not pursue the lawsuit further.

Under the circumstances here, however, we find no authority for plaintiff's claim that Clayco's failure to release the garnishment pending a ruling on its motion and memorandum constituted wanton and malicious conduct. The trial court did not err in denying plaintiff's claim for punitive damages.

Clayco, in its third-party petition, asserts that if plaintiff suffered any harm it was caused by Industrial. The trial court ruled that Industrial was not responsible for the initial garnishment and had no responsibility to release it.

The garnishment order issued to Industrial followed the statutory procedure. Industrial answered and severed the joint accounts in accordance with *Walnut Valley State Bank v. Stovall,* 223 Kan. 459. It then merely followed the court's order in holding the funds until receiving an appropriate order releasing the funds. The trial court was correct in concluding that Industrial was not liable either to plaintiff or to Clayco.

In summary, the trial court's judgment is affirmed in part and reversed in part as hereinabove concluded, and this cause is remanded to that court with instructions to determine what damages, if any, Desma Miller suffered by reason of the continued retention of her funds for the period commencing a reasonable time after the court had determined she was the sole owner of the accounts so impounded.