2004 WY 96

In re Cleve Calvin WALSH and Jennifer Lynn Walsh, Debtors.

Randy Royal, Appellant (Trustee/Objector),

v.

Cleve Calvin Walsh and Jennifer Lynn Walsh, Appellees (Debtors/Respondents).

No. 03–164.

Supreme Court of Wyoming.

Aug. 23, 2004.

Representing Appellant: Randy L. Royal, Greybull, Wyoming.

Representing Appellees: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In their bankruptcy petition, Cleve Calvin Walsh and Jennifer Lynn Walsh (the Walshes) claimed an exemption of seventy-five percent of the funds garnished from their bank account. The bankruptcy trustee objected to the claimed exemption. The United States Bankruptcy Court, for the District of Wyoming, then certified to this Court the following questions, which we have agreed to answer:

1.  Are funds derived from a debtor's wages and deposited into the debtor's bank account exempt from garnish-

ment under Wyo. Stat. Ann. § 1–15–408 or § 40–14–505(b) (LexisNexis 2003)?

2.  If yes, under what circumstances?

## FACTS

[¶ 2] On April 29, 2003, the Walshes filed a Chapter 7 bankruptcy petition. On the same date, a judgment creditor garnished their bank account. The money in the account—$2,541.18—was derived solely from Mr. Walsh's personal service earnings with his employer. The trustee has objected to the Walshes' claim under Wyo. Stat. Ann § 1–15–408 (LexisNexis 2003) that seventy-five percent of the funds are exempt from garnishment. The pertinent portion of that statute reads as follows:

(a) A writ of post judgment garnishment attaching earnings for personal services shall attach that portion of the defendant's accrued and unpaid disposable earnings, specified in subsection (b) of this section. The writ shall direct the garnishee to withhold from the defendant's accrued disposable earnings the amount attached pursuant to the writ and to pay the exempted amount to the defendant at the time his earnings are normally paid. Earnings for personal services shall be deemed to accrue on the last day of the period in which they were earned or to which they relate. If the writ is served before or on the date the defendant's earnings accrue and before the same have been paid to the defendant, the writ shall be deemed to have been served at the time the periodic earnings accrue. If more than one (1) writ is served, the writ first served shall have priority. Notwithstanding any other provision of this subsection, an income withholding order for child support obtained pursuant to W.S. 20–6–201 through 20–6–222 shall have priority over any other garnishment.

## STANDARD OF REVIEW

[¶ 3] The certified questions require this Court to determine the meaning of Wyo. Stat. Ann. § 1–15–408. Our rules of statutory construction are well known and we will not repeat them at length. *See Pagel v.*

*Franscell,* 2002 WY 169, ¶ 9, 57 P.3d 1226, 1230 (Wyo.2002) (*quoting Wyoming Community College Com'n v. Casper Community College Dist.,* 2001 WY 86, ¶¶ 16–18, 31 P.3d 1242, 1249 (Wyo.2001)). We will, however, note a few particularly pertinent rules of construction. Our primary concern is legislative intent, which intent must be ascertained from the words of the statute. *Id.* Construction is unnecessary where statutory language is unambiguous. *Id.* The intent of an unambiguous statute is determined from the ordinary and obvious meaning of the words used. *In re Wilson,* 2003 WY 105, ¶ 6, 75 P.3d 669, 672 (Wyo.2003) (*quoting Wyoming Dept. of Transp. v. Haglund,* 982 P.2d 699, 701 (Wyo.1999)). " 'When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature.' " *Pagel,* 2002 WY 169, ¶ 9, 57 P.3d at 1230 (*quoting Wyoming Community College Com'n,* 2001 WY 86, ¶ 16, 31 P.3d at 1249). " 'A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.' " *Pagel,* 2002 WY 169, ¶ 9, 57 P.3d at 1230 (*quoting Wyoming Community College Com'n,* 2001 WY 86, ¶ 17, 31 P.3d at 1249).

[¶ 4] In addition to these general rules of construction, we also note more specifically that courts are not free to ignore any word the legislature has used. *Keats v. State,* 2003 WY 19, ¶ 28, 64 P.3d 104, 113 (Wyo.2003). And finally, " 'it is a universal rule that courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions.' " *Knowles v. Corkill,* 2002 WY 119, ¶ 19, 51 P.3d 859, 865 (Wyo.2002) (*quoting Lo Sasso v. Braun,* 386 P.2d 630, 632 (Wyo.1963)).

## DISCUSSION

[¶ 5] It is impossible reasonably to read the words "accrued and unpaid" in Wyo. Stat. Ann. § 1–15–408(a) as meaning anything other than money the debtor has earned but has not yet received. This is

especially true inasmuch as the entire subsection is concerned with an employer's responsibilities when served with a writ of garnishment. For example, the garnishee is to "withhold" the amount attached before paying the exempted amount "at the time … earnings are normally paid." Wyo. Stat. Ann § 1–15–408(a). That is not language directed to a bank holding a debtor's deposits. Further, the statute requires that income withholding orders for child support, which orders attach to "payments" due to an obligor, continue to have priority. *See* Wyo. Stat. Ann. § 20–6–201 *et seq.* (LexisNexis 2003). Clearly, this is a statutory construct designed to reach monies not yet paid to the debtor.

[¶ 6] The same is true of Wyo. Stat. Ann. § 40–14–505(a)(ii) (LexisNexis 2003), which concerns garnishments resulting from consumer credit transactions. Under that statute, certain amounts are exempt from garnishment where "the *earnings* of an individual are required to be *withheld* for payment of a debt." (Emphasis added.) The legislative intent is clear on the face of both Wyo. Stat. Ann. § 1–15–408(a) and Wyo. Stat. Ann. § 40–14–505(a)(ii)—these statutes deal with *unpaid* wages or other earnings. They do not deal with wages or other earnings that have made their way into a debtor's bank account.

[¶ 7] While it may seem illogical to extend an exemption to a debtor only until such time as he or she has earnings "in hand," it is not this Court's job to say that the law should be something other than it is. Rather, it is this Court's job only to determine legislative intent from the law as it is. And as it is, the law now clearly limits this exemption to "accrued and unpaid" earnings.

## CONCLUSION

[¶ 8] We answer the first certified question in the negative, making it unnecessary to answer the second question.

LEHMAN, Justice, filed a dissenting opinion with which HILL, Chief Justice, joined.

LEHMAN, Justice, dissenting, with whom HILL, Chief Justice, joins.

[¶ 9] I must respectfully dissent. Upon consideration of the certified questions, I reach a different conclusion than that reached by the majority. Accordingly, I would hold that disposable income derived from a debtor's wages and deposited into the debtor's bank account are exempt from garnishment under Wyo. Stat. Ann. §§ 1–15–408 and 40–14–505(b) (LexisNexis 2003) if the debtor can establish by competent evidence that such sums were derived from earnings for personal services.

[¶ 10] It is clear that pursuant to Wyoming Stat. Ann. § 1–20–109 (LexisNexis 2001), Wyoming has "opted-out" of the federal exemptions and has prescribed its own recognized exemption structure as allowed by law. Section 1–15–408 provides such an exemption. That statute provides:

(a) A writ of post judgment garnishment attaching earnings for personal services shall attach that portion of the defendant's accrued and unpaid disposable earnings, specified in subsection (b) of this section. The writ shall direct the garnishee to withhold from the defendant's accrued disposable earnings the amount attached pursuant to the writ and to pay the exempted amount to the defendant at the time his earnings are normally paid. Earnings for personal services shall be deemed to accrue on the last day of the period in which they were earned or to which they relate. If the writ is served before or on the date the defendant's earnings accrue and before the same have been paid to the defendant, the writ shall be deemed to have been served at the time the periodic earnings accrue. If more than one (1) writ is served, the writ first served shall have priority. Notwithstanding any other provision of this subsection, an income withholding order for child support obtained pursuant to W.S. 20–6–201 through 20–6–222 shall have priority over any other garnishment.

(b) The maximum portion of the aggregate disposable earnings of an individual which are subject to garnishment is the lesser of:

(i) Twenty-five percent (25%) of defendant's disposable earnings for that week; or

(ii) The amount by which defendant's aggregate disposable earnings computed for that week exceeds thirty (30) times the federal minimum hourly wage prescribed by the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(a)(1), in effect at the time the earnings are payable, or, in case of earnings for any pay period other than a week, any equivalent multiple thereof prescribed by the administrator of the Wyoming Uniform Consumer Credit Code in the manner provided by W.S. 40–14–505(b)(iii).

(c) Unless a garnishee is specifically informed by affidavit of the plaintiff that the defendant has other periodic earnings from sources other than from the garnishee and the amount thereof, the garnishee shall treat the defendant's earnings becoming due from the garnishee as the defendant's entire aggregate earnings for the purpose of computing the sum attached by the garnishment.

Section 40–14–505 sets forth:

(a) For the purposes of this part:

(i) "Disposable earnings" means that part of the earnings of an individual remaining after the deduction from those earnings of amounts required by law to be withheld; and

(ii) "Garnishment" means any legal or equitable procedure through which the earnings of an individual are required to be withheld for payment of a debt.

(b) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce payment of a judgment arising from a consumer credit sale, consumer lease, or consumer loan may not exceed the lesser of:

(i) Twenty-five percent (25%) of his disposable earnings for that week; or

(ii) The amount by which his disposable earnings for that week exceed thirty (30)

times the federal minimum hourly wage prescribed by section (6)(a)(1) of the Fair Labor Standards Act of 1938, U.S.C. tit. 29, § 206(a)(1), in effect at the time the earnings are payable;

(iii) In the case of earnings for a pay period other than a week, the administrator shall prescribe by rule a multiple of the federal minimum hourly wage equivalent in effect to that set forth in paragraph (b)(ii) of this section.

(c) No court may make, execute, or enforce an order or process in violation of this section.

[¶ 11] The majority concludes that when periodic earnings for personal services are paid, they lose their character as exempt property under Wyoming's statutory exemption scheme. In support of this argument, the majority points out that § 1–15–408 specifically provides that wage garnishment applies only to "accrued and unpaid" disposable earnings. The majority surmises, therefore, that with the exception of some limited provisions for accounts found in Wyo. Stat. Ann. §§ 1–20–110 and –111 (LexisNexis 2003), there is no exemption in Wyoming for cash or bank accounts.[1] I feel it is improper to determine if the exemption specified within § 1–15–408 should apply based upon the vagaries and arbitrariness of where a judgment debtor's wages are located at the time of service of a writ of garnishment. It makes little sense to allow a judgment creditor to wait to serve a garnishment until a judgment creditor is paid his wages and places such payment into his wallet (or his bank account via automatic deposit or otherwise) and thereby receive one hundred percent of those wages circumventing the purpose of § 1–15–408.

[¶ 12] In addition, because § 1–15–408 refers to "earnings for personal services," the definition for that terminology found within Wyo. Stat. Ann. § 1–15–102(a)(vi) (LexisNexis 2003) must be applied by this court.

"Earnings" or "earnings from personal services" means compensation paid or payable for personal services, whether denom-

---

1. Wyo. Stat. Ann. § 1–20–110 exempts retirement, pension, and annuity accounts from execution, attachment, garnishment or any other judicial process while Wyo. Stat. Ann. § 1–20–111 does the same for contributions to medical savings accounts.

inated as wages, salary, commission, bonus, proceeds of any pension or retirement benefits or deferred compensation plan or otherwise.

*Id.* Thus, the majority's ultimate determination improperly ignores the legislature's definition of "earnings from personal services," specifically that such earnings may also be "paid" and need not be simply "accrued and payable."

[¶ 13] In a somewhat parallel manner, § 1–15–408 also uses the term "garnishee" rather than the term "employer." [2] Therefore, this court should recognize that Wyo. Stat. Ann. § 1–15–502(a) (LexisNexis 2003), addressing the subject of continuing garnishments, is limited to a "garnishee who is an employer of the judgment debtor" indicating that the legislature clearly knew how to specify a "garnishee employer" had it desired to do so within § 1–15–408. Hence, the legislature's use of the term "garnishee" as opposed to "employer" in § 1–15–408 must infer that the term "garnishee" was meant to include banks and other depository institutions. Furthermore, exemption statutes are to be construed liberally in favor of the debtor in order to accomplish their beneficial purposes. *In re Lindell–Heasler,* 154 B.R. 748, 751 (D.Wyo.1992); *Johnston v. Barney,* 842 F.2d 1221, 1223 (10th Cir.1988); *Lingle State Bank v. Podolak,* 740 P.2d 392, 393–94 (Wyo. 1987); *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985); and *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 278–79, 61 S.Ct. 196, 200, 85 L.Ed. 184 (1940).

[¶ 14] Upon my review of the applicable Wyoming statutes, giving particular attention to § 1–15–408, as well as § 40–14–505, I also conclude that § 1–15–408 is ambiguous. As evidenced by the parties' arguments, a question remains whether disposable earnings/earnings from personal services may be attached through garnishment when they are "accrued and unpaid" or "paid or payable."

Resort to the ordinary and obvious common meaning of the terms "accrued," "payable," and "paid" is of little help. The American Heritage Dictionary (Second College Edition, 1991) defines "accrue" as: "3. Law. To become an enforceable or permanent right." That same authority defines the term "payable" as: "1. Requiring payment on a certain date; due." Thus, "accrued" and "payable" have virtually the same meaning. On the other hand, The American Heritage Dictionary defines "paid" as the "[p]ast tense and participle of pay" and the word "pay" as: "1. To give money to in return for goods or services rendered." Therefore, it appears that any distinction between the words "accrued," "payable," and "paid" is one of timing alone, which does not definitively aid us in interpreting § 1–15–408.

[¶ 15] The fact that § 1–15–408 uses the term "garnishee" and not "employer" does not assist me in my analysis. It is true that the continuing garnishment statute, § 1–15–502(a), limits garnishment to a "garnishee who is an employer of the judgment debtor," perhaps implying that the legislature meant to include banks and other depository institutions within the ambit of § 1–15–408. However, §§ 1–20–110 and 1–20–111, which provide an exemption for retirement fund accounts and contributions to medical savings accounts, specifically enumerate that those accounts are "exempt from execution, attachment, garnishment or any other process issued by any court." [3] Thus, one could similarly argue that the legislature knew how to and could have utilized this same language in § 1–15–408 had it desired the exemption for disposable income to continue once deposited into a debtor's account.

[¶ 16] Nonetheless, we have clearly established that when interpreting statutes, our primary consideration must be to determine the legislature's intent. *In re Winters,* 2002

---

**2.** Wyo. Stat. Ann. § 1–15–102(a)(vii) (LexisNexis 2003) sets forth:

> "Garnishee" means a person other than a plaintiff or defendant who is in possession of earnings or property of the defendant and who is subject to garnishment in accordance with the provisions of this chapter.

**3.** Likewise, the language used within Section 407 of the Social Security Act (42 U.S.C. § 407) provides: "none of the monies paid or payable ... under the [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process." *See also S & S Diversified Services, L.L.C. v. Taylor,* 897 F.Supp. 549 (D.Wyo.1995).

WY 29, ¶ 6, 40 P.3d 1231, ¶ 6 (Wyo.2002). While there is no formal legislative history suggesting the purpose of the enactment of § 1–15–408, the historical purpose of exemption statutes has been to protect a debtor by permitting him to retain the basic necessities of life. Therefore, it was intended that after the levy of nonexempt property, the debtor and the debtor's family should not be left destitute. *See In re Norris*, 203 B.R. 463, 465–66 (D.Nev.1996); *Miller v. Monrean*, 507 P.2d 771, 773–76 (Alaska 1973). *In accord see Pellish Bros. v. Cooper*, 47 Wyo. 480, 38 P.2d 607 (1934). Further, this purpose is consistent with our explanation of Wyoming's wedding ring exemption. We said:

> We conclude this limited approach is consistent with the general purposes and guidelines behind allowing debtors to file for bankruptcy protection. 4 *Collier on Bankruptcy* at ¶ 522.01 (15th rev. ed.) explains:
>
>> A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemption of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case.
>
> 1 *Collier on Bankruptcy* at ¶ 1.03[2][a] also recognizes that:
>
>> Chapter 7 of the Bankruptcy Code is entitled "Liquidation" and the title fully expresses the purpose of the chapter's provisions. Chapter 7 provides the mechanism for taking control of the property of the debtor, selling it, and distributing the proceeds to creditors in accordance with the distribution scheme of the Code.
>>
>> Two ideals underlie chapter 7. From the creditor's viewpoint, chapter 7 establishes the concept of equitable distribution among creditors of a debtor's resources which, in most cases, are insufficient to permit full payment to all. From the individual debtor's vantage point, chapter 7 permits the honest debtor to obtain a new financial life through the discharge of unpaid debts.

(Footnotes omitted.)

In attempting to balance the above noted basic bankruptcy principles, we believe that the better approach is to allow debtors an exemption as to their own personal wedding rings thereby not requiring debtors to hand over those wedding rings to satisfy claims of their creditors. As recognized long ago in the case of *Towns v. Pratt*, 33 N.H. 345, 66 Am.Dec. 726, 728 (1856):

> The object of the [exemption] statute is not to secure to the debtor the enjoyment of property of that character at the expense of his creditors, but to prevent his being stripped of those articles of utility and convenience, under the limited value prescribed, requisite for the comfort of himself and family in maintaining a household in every condition of life.

*In re Winters*, ¶¶ 12–13.

[¶ 17] Furthermore, as pointed out in footnote 1 of *Hancock v. Stockmens Bank & Trust Co.*, 739 P.2d 760, 760 (Wyo.1987), Wyo. Stat. Ann. § 1–17–411 (Michie Cum. Supp.1986) provided the applicable language concerning garnishment exemption for earnings for personal services rendered until it was amended in 1987 by the legislature to its present form. Wyo. Stat. Ann. § 1–17–411 (Michie Cum.Supp.1986) provided that:

> The court may order any property of the judgment debtor or money due him in the hands of either himself or another person, not exempt by law, to be applied toward the satisfaction of a judgment. Upon seizure of his property or money, a judgment debtor may request a hearing pursuant to W.S. 1–17–405(c). One-half (1/2) of the earnings of the judgment debtor for his personal services rendered within sixty (60) days immediately preceding the levy of execution or levy of attachment, and due and owing at the time of the levy, are exempt when it appears by the debtor's affidavit or otherwise that the earnings are necessary for the use of his family residing in this state, supported wholly or in part by his labors.

Accordingly, in its previous form, the legislature obviously desired to afford the debtor an

opportunity to continue to provide for his/her family through use of half of his personal services earnings. This exemption was limited, however, merely to personal services earnings due and owing within sixty-days prior to levy. This language clearly infers that the legislature then intended to narrow the exemption to the applicable time frame and perhaps even implies the legislature's desire to limit the exemption only to earnings due and owing and not continue the exemption once these earnings were paid and placed into either the debtor's hands or deposited into an account.

[¶ 18] However, when the legislature modified the language to its present form in 1987, it deleted any sixty-day period preceding levy of the funds. This modification surely evidences the legislature's intention to apply the exemption to any due and owing personal services earnings of the debtor regardless of any prior time frame. In addition, I believe that this change signals the legislature's choice to allow the designated portion of these funds to remain exempt even after they were paid.

[¶ 19] Although this court has not directly addressed the issues posed in this case, it has given some limited direction in the area. In *Hancock v. Stockmens Bank & Trust Co.*, at 761–63, in interpreting § 1–15–408's predecessor statute, this court impliedly recognized an exemption for the funds within a debtor's bank account insofar as the debtor could provide some accounting in the form of tracing that the deposited funds came from disposable income. We said:

> The majority rule is that the burden of proving what funds in a bank account, held jointly by the judgment debtor and another depositor, are not subject to execution is on the depositors. *Yakima Adjustment Service, Inc. v. Durand,* 28 Wash.App. 180, 622 P.2d 408, 411 (1981). See also *Hayden v. Gardner,* 238 Ark. 351, 381 S.W.2d 752 (1964); *Leaf v. McGowan,* 13 Ill.App.2d 58, 141 N.E.2d 67 (1957); *Miller v. Clayco State Bank,* 10 Kan.App.2d 659, 708 P.2d 997 (1985); *Purma v. Stark,* 224 Kan. 642, 585 P.2d 991 (1978); *Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 574 P.2d 1382 (1978); *Baker v. Baker,* Okl.App., 710

P.2d 129 (1985); Annot., Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One of the Joint Depositors, 11 A.L.R.3d 1465 (1967). This rule is in harmony with the " 'general rule of evidence that the burden of proof lies on the person who wishes to support his case by a particular fact which lies more peculiarly within his knowledge, or of which he is supposed to be cognizant.' Principles of Evidence, § 274; 1 Greenl. Ev. § 79; Starkie Ev. § 589." *Selma, Rome and Dalton Railroad Company v. United States,* 139 U.S. 560, 567–568, 11 S.Ct. 638, 640, 35 L.Ed. 266 (1891). See also *United States v. New York, New Haven and Hartford Railroad Company,* 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957); *United States v. Denver and Rio Grande Railroad Company,* 191 U.S. 84, 24 S.Ct. 33, 48 L.Ed. 106 (1903); *Lake v. Callis,* 202 Md. 581, 97 A.2d 316 (1953); *Skeen v. Stanley Company of America,* 362 Pa. 174, 66 A.2d 774 (1949); IX Wigmore on Evidence, § 2486 at 290 (1983).

> The majority rule is consistent with a common sense approach, and "is the fair and reasonable rule because the depositors are in a much better position than the judgment creditor to know the pertinent facts." *Hayden v. Gardner, supra,* 381 S.W.2d at 754. This rule also conforms to the principle that is well established in Wyoming jurisprudence that the burden of proof is on the party who asserts the affirmative of any issue. *Osborn v. Manning,* Wyo., 685 P.2d 1121, 1124 (1984); *Morrison v. Reilly,* Wyo., 511 P.2d 970, 972 (1973). See also *Younglove v. Graham and Hill,* Wyo., 526 P.2d 689, 693 (1974) (affirmative defense); *Hawkeye–Security Insurance Company v. Apodaca,* Wyo., 524 P.2d 874, 879 (1974) (exception to statute of limitations—estoppel); *Gonzales v. Personal Collection Service,* Wyo., 494 P.2d 201, 207 (1972) (affirmative defense); *First National Bank at Cody v. Fay,* 80 Wyo. 245, 257, 341 P.2d 79 (1959) (entitlement to reimbursement); *Takahashi v. Pepper Tank and Contracting Company,* 58 Wyo. 330, 362, 131 P.2d 339 (1942) (exception such as license); *First National*

*Bank of Morrill v. Ford,* 30 Wyo. 110, 216 P. 691, 692, 31 A.L.R. 1441 (1923).

The manifest intention of § 1–17–405(c), W.S.1977, Cum.Supp.1986, in accordance with which Hancock pursued the claimed exemption, is that the debtor should assert his right to the exemption. The statutory exemptions serve to avoid the execution or garnishment, and thus are affirmative defenses in accordance with Rule 8(c), W.R.C.P. See *Texas Gulf Sulphur Company v. Robles,* Wyo., 511 P.2d 963, 965 (1973) (An affirmative defense is "a direct or implicit admission of plaintiff's claim and assertion of other facts which would defeat a right to recovery * * *."). Hancock had the burden of proving which of the garnished funds in the joint bank account were exempt from execution. He acknowledged that burden by failing to object in the trial court or to argue on appeal that imposing the burden of proof on him was improper. It follows that, not only under the majority rule, but because it became the law of this case, Hancock had the burden of proving those amounts in the joint bank account which were exempt from execution. *Fife v. State,* Wyo., 676 P.2d 565, 568 (1984).

(Footnote omitted.) *In accord see S & S Diversified Services, L.L.C. v. Taylor,* 897 F.Supp. 549, 552 (D.Wyo.1995).

[¶ 20] More recently, this court indicated in *McManaman v. McManaman,* 2002 WY 128, 53 P.3d 103 (Wyo.2002), dealing with a claimed exemption to garnished proceeds from cattle sales deposited in a bank account, that it was not the location of those funds within the account but the origin of those funds that was determinative of whether an exemption applied. This court stated:

McManaman next contends that the district court erred in determining that the statutory exemption for earnings does not apply to proceeds from the sale of his cattle. He contends that his ranching operations are his sole source of income and the legislature intended to exempt earnings which provide for the basic necessities of life. We proceed with our discussion of this issue, but note that a majority of jurisdictions now recognize that support

orders are exceptions to statutory limitations on collection. Because the parties here did not raise or brief the issue whether the garnishment statutory exemptions apply to court-ordered child support and arrearages reduced to money judgment, we assume without deciding that the statutory exemptions apply to this garnishment proceeding.

Wyo. Stat. Ann. § 1–15–102 (LexisNexis 2001) defines earnings as follows:

(a) As used in this chapter unless otherwise defined:

. . .

(vi) "Earnings" or "earnings from personal services" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, proceeds of any pension or retirement benefits or deferred compensation plan or otherwise;

. . .

McManaman relies upon our decision in *Lingle State Bank of Lingle v. Podolak,* 740 P.2d 392 (Wyo.1987). Podolak considered an earnings exemption available under § 1–17–411, now superseded, and decided the legislature intended the earnings exemption to apply to income produced by farming and ranch. *Id.* at 394. Because new statutory provisions had taken effect at the time of the *Podolak* decision, we noted that the case was consequently circumscribed in future application. *Id.* n. 1. Relying upon this footnote and our decision in *Coones v. FDIC,* 796 P.2d 803 (Wyo.1990), the State contends that this Court has already decided that proceeds from the sale of cattle are not exempt under § 1–15–102(a)(vi).

In *Coones,* the general exemption statutes, Wyo. Stat. Ann. § 1–20–101 through 1–20–110, did not provide any provision for earnings exemption; however, the appellants in the case contended that a transferred application of the garnishment statute execution, § 1–15–102, provided a basis for allowing a rancher or farmer to claim a seventy-five percent exemption of proceeds from the sale of non-purchase money livestock and seventy-five percent of the value of crops planted and livestock born after

the security interest was perfected. *Id.* at 805. *Coones* rejected appellant's contention, first, by noting that *Podolak* provided no precedent because the statute addressed in it no longer existed, and, secondly, because the statutory language "earnings for personal services" could not be interpreted to include any income other than that periodically payable by a third party. Specifically, *Coones* stated:

> We find from a comparison of the changed phraseology that the broadly based rules found in earlier Wyoming law were constricted by the 1987 definition which itemizes a character of identical rights, e.g., wages, salary, commission, bonus and proceeds of any pension or retirement benefit or deferred compensation plan. Statutes are entitled to a reasonable interpretation and we consider the character of benefits clearly defined within a wage and salary characterization. Profits and business earnings are outside the meaning of wage and salary. This interpretation gathers support from the garnishment statute provision which recognizes an obligation to pay as being different from profit or business earnings which involve a right to receive.

Appellants further contend that the word "otherwise" could suffice to provide entitlement for the broad character of rights found in *Podolak* to result from the prior statute. We cannot accept this thoughtful contention since its effect would be to disassociate the structure of the clause when relating to one character of exempt funds by adding an almost unlimited character of other funds which would have no particular validation within the constraints of a continuing wage garnishment statutory system. We limit any application of "otherwise" in W.S. 1–15–102(a)(vi) to a character of third-party obligations payable for services rendered by the claimant for exemption. Intrinsic to the meaning of W.S. 1–15–102 are the provisions of W.S. 1–15–408 which are related to earnings for personal services periodically payable. Business profits and receipts from crop and livestock simply cannot be logically impressed with the garnishment concept. *Id.* at 805–06.

Although *Coones* involved bankruptcy issues, this last holding broadly sweeps and does not permit McManaman's argument to prevail. McManaman's bank account funds are not traceable to a third-party obligation payable periodically. Additionally, if the exemption did apply when the funds were owing, McManaman has not provided any argument or authority that the exemption was not extinguished upon payment of the earnings into his bank account. We, therefore, hold that McManaman's bank account funds are not exempt from the writ of garnishment and affirm the district court's order.

*McManaman,* ¶¶ 10–14. Hence, while this court did not address the particular issue raised by this appeal in *McManaman,* we did recognize the possibility that the disposable income exemption might continue after being placed in a debtor's bank account.

[¶ 21] Courts in other jurisdictions that have faced this issue have found that to the extent funds in a bank account can be traced to the debtor's wages, that portion is exempt. I find the reasoning used by the bankruptcy court in *In re Kobernusz,* 160 B.R. 844, 847–48 (D.Colo.1993) (footnote omitted), when interpreting a Colorado statutory scheme very similar to that of Wyoming, particularly persuasive.

> Plaintiff's counsel had issued from this Court a writ of garnishment. That writ was in accordance with the Colorado state practice as set forth in Colo.R.Civ.P. 103. The writ was properly served upon the Bank, which promptly responded that it had funds on account in the name of Defendant. At the time of the service of the writ of garnishment, Defendant received notice of the garnishment and a partial list of exemptions that could be claimed.
>
> Defendant filed his claim for exemption under Colo.Rev.Stat. § 13–54–104. He claims that 75% of his money is exempt, as it constitutes wages earned by him. On the other hand, Plaintiff argues that the ability to claim this exemption was lost when the money was placed into a joint

bank account and co-mingled with other monies.

Colorado law provides that no more than twenty-five percent of the aggregate of disposable earnings per week is subject to garnishment. Colo.Rev.Stat. § 13–54–104(2)(a). Multiples of the minimum federal wage may also be used. That is the case where earnings are paid other than by the week. Colo.Rev.Stat. § 13–54–104(2)(b). Plaintiff's claim is that this statute does not apply at all, since the money lost its identity as earnings when placed into the bank account.

It is clear from the offer of proof that Defendant was not paid in the normal weekly fashion, but was paid as a subcontractor. His pay was not subject to deductions for federal income tax or Social Security. By the same token, the income falls into the category of "earnings" as defined by Colo.Rev.Stat. § 13–54–104(1)(b). The Court is satisfied that the money in the account came from Defendant's labor and is, thus, earnings for purposes of claiming an exemption.

Plaintiff's argument is that the character of earnings is lost once funds are placed into a bank account. Indeed, there is case law that indicates that such a view is appropriate. *John O. Melby & Co. v. Anderson,* 88 Wis.2d 252, 276 N.W.2d 274 (1979); *Edwards v. Henry,* 97 Mich.App. 173, 293 N.W.2d 756 (1980); *Dunlop v. First Nat. Bank of Arizona,* 399 F.Supp. 855 (D.Ariz.1975).

On the other hand, Colorado case law has taken the opposite view of the law. In *Rutter v. Shumway,* 16 Colo. 95, 26 P. 321 (1891), the Colorado Supreme Court specifically held that earnings did not lose such identity when placed into a bank account. This case has not been overruled by the Colorado Supreme Court. Indeed, it has been followed, though admittedly all cases are many years old. The general concept of the sanctity of the exemption for wages was upheld in *Finance Acceptance Company v. Breaux,* 160 Colo. 510, 419 P.2d 955 (1966) (refusal to allow set-off for debt owed to employer from wages upheld). At least one court outside of Colorado has

questioned the continued vitality of *Rutter v. Shumway. See Holmes v. Blazer Financial Services, Inc.,* 369 So.2d 987, 989 (Fla.App.1979).

Plaintiff does call the Court's attention to *Usery v. First Nat. Bank of Arizona,* 586 F.2d 107 (9th Cir.1978). This case would appear, at first, to fully support Plaintiff's position. Yet a careful reading indicates that it deals with a bank's duty to calculate an exemption for a debtor under the Consumer Credit Protection Act (CCPA). 15 U.S.C. § 1672, et seq. If this case hinged on an interpretation of the CCPA, then *Usery* would be compelling precedent. In this case, though, Defendant has chosen to rely upon Colorado law for his exemption.

Defendant has stated through his offer of proof that he was receiving earnings for his personal services in construction. Such payment appears to fall clearly into the category of "earnings", as indicated by Colo.Rev.Stat. § 13–54–104[(1)](b)(A). The Colorado Supreme Court's decision in *Rutter v. Shumway* stressed that wages should not lose such designation solely on the basis of being placed into a bank account. The same could also be said of money being held in a defendant's pocket. To follow the logic of Plaintiff, money received from an employer, even if exempt at time of payment, would lose such exemption when placed into a wallet. Such a result would be absurd and improper. Though one hundred and two years old, the decision *Rutter v. Shumway* is still applicable and controlling.

[¶ 22] Similarly, in *In re Norris,* 203 B.R. at 466, that court recognized that in order to permit a wage earner to enjoy any benefit from the protection afforded under Nevada law, it was necessary to allow the wage earner a reasonable opportunity to negotiate the "disposable earnings" and spend the funds, otherwise the exemption would be rendered meaningless. Thus, that court reasoned that a deposit of earnings, whether by the debtor or directly by the employer, should not cause the statutorily exempt wages to lose their exempt status as long as the proceeds of the

account are traceable to those earnings. In support of this holding, the court said:

> Other jurisdictions have recognized that statutorily exempt funds do not lose their exempt status when deposited into a personal checking account. *See In re Caslavka*, 179 B.R. 141, 147 (Bankr.N.D.Iowa 1995) (construing Iowa law that "protection afforded by the exemption would be rendered meaningless if exempt status is lost by negotiating the paycheck") (citing *MidAmerica Savs. Bank v. Miehe*, 438 N.W.2d 837, 839 (Iowa 1989); *In re Arnold*, 193 B.R. 897 (Bankr.W.D.Mo.1996) ("[I]t elevates form over substance to claim that the [paycheck in debtor's] hand was wages, but the check in his checking account was not); *In re Frazier*, 116 B.R. 675 (Bankr.W.D.Wis.1990) (exempt disability benefits check deposited into bank account with other exempt funds retained exempt status; benefits were "readily identifiable").

At least two United States Supreme Court opinions have also recognized that exempt funds do not lose their exempt status upon deposit if the funds in the account can be traced to exempt funds. *See Porter v. Aetna Casualty & Sur. Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) (veterans' benefits) and *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (welfare benefits). *In Porter*, 370 U.S. at 159 [82 S.Ct. 1231], the United States Supreme Court held that veterans' benefits retained their exempt status after being deposited in a savings account, reasoning that:

> Since legislation of this type should be liberally construed, to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof, we feel that deposits such as are involved here should remain inviolate. The Congress we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Id.* at 162 [82 S.Ct. 1231] (citations omitted). And 31 Am.Jur.2d *Exemptions* § 224 (1989) states:

> There is authority that a deposit of exempt funds in a bank does not affect a debtor's exemption, nor change the exempt character of the fund, so long as the source of the exempt funds is reasonably traceable. If it is impossible to separate out exempt from nonexempt funds, the general rule is that an exemption cannot lie. This rule has been applied, though not without exception, to a deposit of exempt wages, exempt compensation awards, exempt veterans' benefits, and exempt insurance proceeds or funds.

*Id.* at 467.

[¶ 23] The trustee counters by citing *Usery v. First Nat'l Bank of Arizona*, 586 F.2d 107 (9th Cir.1978) and *In re Adcock*, 264 B.R. 708 (D.Kan.2000). I am not persuaded by the reasoning within the *Usery* case for those same reasons expressed by the court in *In re Kobernusz*, at 847. Additionally, I find the case of *In re Adcock* to be distinguishable to the instant case. The facts presented by *In re Adcock* dealt with a bankruptcy trustee's avoidance powers as opposed to an actual garnishment. I recognize that there exists a split in case law authority. *See In re Kobernusz*, at 847–48. However, I do not find the contradictory reasoning within those cases to be convincing and, thus, I would not adopt the holdings therein.

[¶ 24] The trustee also complains that if the exemption provided by § 1–15–408 is allowed to continue after such monies are placed into a debtor's bank account, there will be no end to the exemption because the debtor may always argue that his earnings were used to purchase his residence, vehicles, or other tangible assets. I do not agree. I believe that the legislature's intent is served only insofar as such monies are traceable from the debtor's earnings into an account and does not continue once the debtor chooses to spend such monies for the purchase of tangible assets, unless such as-

sets may qualify for their own independent exemption.

[¶ 25]   The trustee further expresses that in situations where a garnishment is served on a bank, a bank does not have the ability to calculate a wage earner's exemption because it will not know if the amount deposited into the account comes from earnings and if proper withholdings have been made from those amounts.   However, the process provided by the Wyoming garnishment scheme does not require a bank to determine the exempt status of the monies held in bank accounts. Rather, it is the debtor's responsibility to affirmatively assert any exemption that he may have in the subject assets.

[¶ 26]   Thus, having carefully considered the parties' arguments and reviewed Wyoming's statutory exemption scheme and applicable authority, I would hold that disposable income derived from a debtor's wages and deposited into the debtor's bank account are exempt from garnishment under §§ 1–15–408 and 40–14–505(b) insofar as the debtor can by competent evidence establish that such monies were derived from earnings for personal services.